

**COMMITMENT FOR TITLE INSURANCE (T-7)**
**Issued by**
**FIRST NATIONAL TITLE INSURANCE COMPANY**

# MOVANTS' EXHIBIT C

We, First National Title Insurance Company, will issue our title insurance policy or policies (the Policy) to You (the proposed insured) upon payment of the premium and other charges due, and compliance with the requirements in Schedule C. Our Policy will be in the form approved by the Texas Department of Insurance at the date of issuance, and will insure your interest in the land described in Schedule A. The estimated premium for our Policy and applicable endorsements is shown on Schedule D. There may be additional charges such as recording fees, and expedited delivery expenses.

This Commitment ends ninety (90) days from the effective date, unless the Policy is issued sooner, or failure to issue the Policy is our fault. Our liability and obligations to you are under the express terms of this Commitment and end when this Commitment expires.

THE FOLLOWING COMMITMENT FOR TITLE INSURANCE IS NOT VALID UNLESS YOUR NAME AND THE POLICY AMOUNT ARE SHOWN IN **SCHEDULE A**, AND OUR AUTHORIZED REPRESENTATIVE HAS COUNTERSIGNED BELOW.

ISSUED BY:
Capital Title of Texas, LLC



**FIRST NATIONAL TITLE INSURANCE COMPANY**

By: _____
Chad Hansen, President

_____
Patrick McMillan, Treasurer

_____
By Authorized Signatory

## TEXAS TITLE INSURANCE INFORMATION

| | |
|---|---|
| Title insurance insures you against loss resulting from certain risks to your title.<br><br>The commitment for Title Insurance is the title insurance company's promise to issue the title insurance policy. The commitment is a legal document. You should review it carefully to completely understand it before your closing date. | El seguro de título le asegura en relación a pérdidas resultantes de ciertos riesgos que pueden afectar el título de su propiedad.<br><br>El Compromiso para Seguro de Titulo es la promesa de la compañía aseguradora de títulos de emitir la póliza de seguro de título. El Compromiso es un documento legal. Usted debe leerlo cuidadosamente y entenderlo completamente antes de la fecha para finalizar su transacción. |

## CONDITIONS AND STIPULATIONS

1. If you have actual knowledge of any matter which may affect the title or mortgage covered by this Commitment, that is not shown in Schedule B, you must notify us in writing. If you do not notify us in writing, our liability to you is ended or reduced to the extent that your failure to notify us affects our liability. If you notify us, or we learn of such matter, we may amend Schedule B, but we will not be relieved of liability already incurred.

2. Our liability is only to you, and others who are included in the definition of Insured in the Policy to be issued. Our liability is only for actual loss incurred in your reliance on this Commitment to comply with its requirements, or to acquire the interest in the land. Our liability is limited to the amount shown in Schedule A of this Commitment and will be subject to the following terms of the Policy: Insuring Provisions, Conditions and Stipulations, and Exclusions.

Your Commitment for Title Insurance is a legal contract between you and us. The Commitment is not an opinion or report of your title. It is a contract to issue you a policy subject to the Commitment's terms and requirements.

Before issuing a Commitment for Title Insurance (the Commitment) or a Title Insurance Policy (the Policy), the Title Insurance Company (the Company) determines whether the title is insurable. This determination has already been made. Part of that determination involves the Company's decision to insure the title except for certain risks that will not be covered by the Policy. Some of these risks are listed in Schedule B of the attached Commitment as Exceptions. Other risks are stated in the Policy as Exclusions. These risks will not be covered by the Policy. The Policy is not an abstract of title nor does a Company have an obligation to determine the ownership of any mineral interest.

- **MINERALS AND MINERAL RIGHTS** may not be covered by the Policy. The Company may be unwilling to insure title unless there is an exclusion or an exception as to Minerals and Mineral Rights in the Policy. Optional endorsements insuring certain risks involving minerals, and the use of improvements (excluding lawns, shrubbery and trees) and permanent buildings may be available for purchase. If the title insurer issues the title policy with an exclusion or exception to the minerals and mineral rights, neither this Policy, nor the optional endorsements, ensure that the purchaser has title to the mineral rights related to the surface estate.

Another part of the determination involves whether the promise to insure is conditioned upon certain requirements being met. Schedule C of the Commitment lists these requirements that must be satisfied or the Company will refuse to cover them. You may want to discuss any matters shown in Schedules B and C of the Commitment with an attorney. These matters will affect your title and your use of the land.

When your Policy is issued, the coverage will be limited by the Policy's Exceptions, Exclusions and Conditions, defined below.

- **EXCEPTIONS** are title risks that a Policy generally covers but does not cover in a particular instance. Exceptions are shown on Schedule B or discussed in Schedule C of the Commitment. They can also be added if you do not comply with the Conditions section of the Commitment. When the Policy is issued, all Exceptions will be on Schedule B of the Policy.

- **EXCLUSIONS** are title risks that a Policy generally does not cover. Exclusions are contained in the Policy but not shown or discussed in the Commitment.

- **CONDITIONS** are additional provisions that qualify or limit your coverage. Conditions include your responsibilities and those of the Company. They are contained in the Policy but not shown or discussed in the Commitment. The Policy Conditions are not the same as the Commitment Conditions.

You can get a copy of the policy form approved by the Texas Department of Insurance by calling the Title Insurance Company at 1-888-944-3684 or by calling the title insurance agent that issued the Commitment. The Texas Department of Insurance may revise the policy form from time to time.

You can also get a brochure that explains the policy from the Texas Department of Insurance by calling 1-800-252-3439.

Before the Policy is issued, you may request changes in the policy. Some of the changes to consider are:

- Request amendment of the "area and boundary" exception (Schedule B, paragraph 2). To get this amendment, you must furnish a survey and comply with other requirements of the Company.  On the Owner's Policy, you must pay an additional premium for the amendment.  If the survey is acceptable to the Company and if the Company's other requirements are met, your Policy will insure you against loss because of discrepancies or conflicts in boundary lines, encroachments or protrusions, or overlapping of improvements.  The Company may then decide not to insure against specific boundary or survey problems by making special exceptions in the Policy.  Whether or not you request amendment of the "area and boundary" exception, you should determine whether you want to purchase and review a survey if a survey is not being provided to you.

- Allow the Company to add an exception to "rights of parties in possession." If you refuse this exception, the Company or the title insurance agent may inspect the property. The Company may except to and not insure you against the rights of specific persons, such as renters, adverse owners or easement holders who occupy the land. The Company may charge you for the inspection. If you want to make your own inspection, you must sign a Waiver of Inspection form and allow the Company to add this exception to your Policy.

The entire premium for a Policy must be paid when the Policy is issued. You will not owe any additional premiums unless you want to increase your coverage at a later date and the Company agrees to add an Increased Value Endorsement.

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|
| FOR INFORMATION, OR TO MAKE A COMPLAINT CALL OUR TOLL-FREE NUMBER | PARA INFORMACION, O PARA SOMETER UNA QUEJA LLAME AL NUMERO GRATIS |
| **1-888-944-3684** | **1-888-944-3684** |
| ALSO YOU MAY CONTACT THE TEXAS DEPARTMENT OF INSURANCE AT | TAMBIEN PUEDE COMUNICARSE CON EL DEPARTAMENTO DE SEGUROS DE TEXAS AL |
| **1-800-252-3439** | **1-800-252-3439** |

To obtain information on:

1. Filing a complaint against an insurance company or agent.
2. Whether an insurance company or agent is licensed.
3. Complaints received against an insurance company or agent.
4. Policyholder rights.
5. A list of consumer publications and services available through the Department.

Para obtener información sobre:

1. Como someter una queja en contra de una compañía de seguros o agente de seguros.
2. Si una compañía de seguros o agente de seguros tiene licencia.
3. Quejas recibidas en contra de una compañía de seguros o agente de seguros.
4. Los derechos del asegurado.
5. Una lista de publicaciones y servicios para consumidores disponibles a través del Departamento.

YOU MAY ALSO WRITE TO
THE TEXAS DEPARTMENT OF INSURANCE
P.O. BOX 149104
AUSTIN, TEXAS 78714-9104
FAX NO. (512) 475-1771

TAMBIEN PUEDE ESCRIBIR AL
DEPARTAMENTO DE SEGUROS
DE TEXAS
P.O. BOX 149104
AUSTIN, TEXAS 78714-9104
FAX NO. (512) 475-1771



**COMMITMENT FOR TITLE INSURANCE (T-7)**
**Issued by**
**FIRST NATIONAL TITLE INSURANCE COMPANY**

**SCHEDULE A**

Effective Date: **July 18, 2024, 8:00 am**                    File No: **24-███ VC**

Commitment No.: _____, issued **August 1, 2024, 8:00 am**

1.  The policy or policies to be issued are:

    a.  OWNER'S POLICY OF TITLE INSURANCE (Form T-1)
        (Not applicable for improved one-to-four family residential real estate)
        Policy Amount: **$3,000,000.00**
        PROPOSED INSURED:  **MIKE HINES and JANE HINES**

    b.  TEXAS RESIDENTIAL OWNER'S POLICY OF TITLE INSURANCE
        ONE-TO-FOUR FAMILY RESIDENCES (Form T-1R)
        Policy Amount:
        PROPOSED INSURED:

    c.  LOAN POLICY OF TITLE INSURANCE (Form T-2)
        Policy Amount:
        PROPOSED INSURED:
        Proposed Borrower:

    d.  TEXAS SHORT FORM RESIDENTIAL LOAN POLICY OF TITLE INSURANCE (Form T-2R)
        Policy Amount:
        PROPOSED INSURED:
        Proposed Borrower:

    e.  LOAN TITLE POLICY BINDER ON INTERIM CONSTRUCTION LOAN (Form T-13)
        Binder Amount:
        PROPOSED INSURED:
        Proposed Borrower:

    f.  OTHER
        Policy Amount:
        PROPOSED INSURED:

2.  The interest in the land covered by this Commitment is:  **Fee Simple as to Tracts I & II; Non-exclusive Access Easement as to Tract III**

3.  Record title to the land on the Effective Date appears to be vested in:
    **Los Cabos Ranch LLC**

4.  Legal description of land:
    **Tract I:**

    **Being a tract of land containing 308.94 acres out of that 4085.03 acre tract described in a conveyance by The Speck and Polly New Charitable Foundation, Inc. to 7-Oaks Land & Cattle LLC et al by deed dated June 17, 2013, recorded as Instrument No. 201307441 of the Official Records of Victoria County, Texas and also being out of the John B. Sideck Grant, Abstract No. 108, Victoria County, Texas.**

    **Said 308.94 acre tract being more particularly  described by metes and bounds to-wit:**

    **Beginning at 5/8 inch iron rod set for the Southwest corner of this tract, said point being the Southwest corner of said 4085.03 acre tract, in the East boundary of that 817.46 acre Parcel No. 3**

described in a Partition Deed to Mary Jo Smith dated November 6, 1975, recorded in Volume 891, Page 944 of the Deed Records of Victoria County, Texas and in a North boundary of the San Antonio River Road (a County Road 60 feet in width);

Thence N 13° 20' 10" E along a portion of the West boundary of said 4085.03 acre tract, along a portion of the East boundary of said 817.46 acre tract and along the general course of a new fence, at 3268.98 feet a 5/8 inch iron rod found for an angle in this boundary, said point being an angle in the West boundary of said 4085.03 acre tract, the Northeast corner of said 817.46 acre tract and a Southeast exterior corner of that 246.00 acre tract described in a conveyance by Ada Ann Tracy to Martin A. Huber et al by deed dated May 3, 1996, recorded in Volume 219, Page 459 of said Official Records;

Thence N 13° 18' 20" E along a portion of the West boundary of said 4085.03 acre tract, along a portion of the East boundary of said 246.00 acre tract and along the general course of a new fence, at 1759.61 feet a 5/8 inch iron rod set for the Northwest corner of this tract;

Thence S 76° 53' 00" E crossing a portion of said 4085.03 acre tract and along the general course of a new fence, at 4570.15 feet a 5/8 inch iron rod set for the Northeast corner of this tract;

Thence S 05° 35' 20" E crossing a portion of said 4085.03 acre tract and along the general course of an old fence, at 2799.55 feet a  5/8 inch iron rod set for a Southeast exterior corner of this tract, said point being in a South boundary of said 4085.03 acre tract and in the North boundary of that 602.95 acre tract described in a conveyance by The Speck and Polly New Charitable Foundation, Inc. to the Arnecke Family Limited Partnership by deed dated April 24, 2009, recorded in as instrument No. 200904261 of said Official Records;

Thence N 76° 51' 30" W along a portion of a South boundary of said 4085.03 acre tract, along a portion of the North boundary of said 602.95 acre tract and along the general course of a fence, at 5417.19 feet a 5/8 inch iron rod found for a Southeast interior corner of this tract, said point being a Southeast interior corner of said 4085.03 acre tract and the Northwest corner of said 602.95 acre tract;

Thence S 13° 20' 10" W along an East boundary of said 4085.03 acre tract, along the West boundary of said 602.95 acre tract and along the general course of a fence, at 2392.64 feet a point for a Southeast exterior corner of this tract, said point being occupied by a fence corner post and being a Southeast exterior corner of said 4085.03 acre tract, the Southwest corner of said 602.95 acre tract and in a North boundary of said San Antonio River Road;

Thence N 64° 18' 30" W along a South boundary of said 4085.03 acre tract and along a portion of a North boundary of said San Antonio River Road, at 61.42 feet the place of beginning and containing 308.94 acres of land.

Bearings shown herein are based on NAD 83, Texas South Central Zone.

TRACT II:

Field notes of a 159.00 acre tract of land, being part of a 602.95 acre tract conveyed from The Speck and Polly New Charitable Foundation, Inc. to the Arnecke Family Limited Partnership by Special Warranty Deed dated April 24th, 2009, recorded in Instrument No. 200904261 of the Official Public Records of Victoria County, Texas;

Said 159.00 acre tract is comprised of a portion of the John B. Sideck Grant,  Abstract 108, and the Miguel Manchaca Survey, Abstract 86, is situated in Victoria County, Texas; approximately 14 1/2 miles southwest of the City of Victoria, and is described by metes and bounds as follows:

Beginning at a 5/8" iron rod found at the northwest corner of said 602.95 acre tract and an interior corner of a 308.94 acre tract conveyed from Eddie R. Stubbs, Jr., to Los Cabos Ranch LLC, by Warranty Deed dated January 27th, 2021, recorded in Instrument No. 202101324 of the Official Public Records of Victoria County, Texas; for the northwest corner of this tract;

Thence S 76° 51' 35" E along a south line of said 308.94 acre tract, the north line of said 602.95 acre tract,

and north line of this tract, a distance of 5416.94 feet to a 5/8" iron rod with surveyor's cap stamped "2028" found at the northerly southeast corner of said 308.94 acre tract and northeast corner of this tract;

Thence S 05° 14' 26" E along the northerly east line of this tract, crossing said 602.95 acre tract, a distance of 732.05 feet to a 5/8" iron rod found at an interior corner of said 602.95 acre tract and north corner of a 97.32 acre tract Parcel A conveyed from the Estate of Louise B. Murphy, Deceased, et al, to James J. Murphy, III, by Deed dated March 13, 2000, recorded in Instrument No. 200011833 of the Official Records of Victoria County, Texas; for the northerly southeast corner of this tract;

Thence S 44° 48' 40" W along a northwest line of said 97.32 acre tract, a southeast line of said 602.95 acre tract, and easterly southeast line of this tract, a distance of 445.92 feet to a 5/8" iron rod with surveyor's cap stamped "RPLS 1907" set for an exterior corner of this tract;

Thence N 76° 51' 35" W across said 602.95 acre tract, along a south line of this tract, a distance of 844.35 feet to a 5/8" iron rod with surveyor's cap stamped "RPLS 1907' set for an interior corner of this tract;

Thence S 44° 50' 29" W across said 602.95 acre tract and along the westerly southeast line of this tract, a distance of 256.08 feet to a 5/8" iron rod with surveyor's cap stamped "RPLS 1907" set for the westerly southeast corner of this tract;

Thence N 76° 51' 35" W across said 602.95 acre tract and along a south line of this tract, a distance of 4439.24 feet to a 5/8" iron rod with surveyor's cap stamped "RPLS 1907" set in the west line of said 602.95 acre tract and southerly east line of said 308.94 acre tract, for the southwest corner of this tract;

Thence N 13° 20' 25" E along the west line of said 602.95 acre tract, the southerly east line of said 308.94 acre tract, and west line of this tract, a distance of 1292.09 feet to the place of beginning, containing 159.00 acres of land, more or less; subject to all easements of record.

TRACT III Access Easement for the benefit of Tract II herein:

Being an egress and ingress easement 60 feet in width out of that 4897.82 acre tract described in a conveyance by William O. Green, Jr. as Independent Executor of the Estate of Polly Henry New, Deceased and as Trustee of the Speck and Polly New Charitable Foundation to the Speck and Polly New Charitable Foundation, Inc. by deed dated May 6, 2002 and being recorded as Instrument No. 200207444 in the Official Records of Victoria County, Texas and being out of the John B. Sideck Grant, Abstract No. 108, Victoria County, Texas.

NOTE: The Company is prohibited from insuring the area or quantity of the land described herein. Any statement in the legal description contained in Schedule "A" as to area or quantity of land is not a representation that such area or quantity is correct, but is made only for informal identification purposes and does not override Item 2 of Schedule "B" hereof.



## SCHEDULE B

## EXCEPTIONS FROM COVERAGE

In addition to the Exclusions and Conditions and Stipulations, your Policy will not cover loss, costs, attorney's fees, and expenses resulting from:

1.  The following restrictive covenants of record itemized below (We must either insert specific recording data or delete this exception):

    **Item No. 1, Schedule B, has been deleted in its entirety.**

2.  Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements.

3.  Homestead or community property or survivorship rights, if any, of any spouse of any insured. (Applies to the Owner's Policy only.)

4.  Any titles or rights asserted by anyone, including, but not limited to, persons, the public, corporations, governments or other entities,

    a.  to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or
    b.  to lands beyond the line of the harbor or bulkhead lines as established or changed by any government, or
    c.  to filled-in lands, or artificial islands, or
    d.  to statutory water rights, including riparian rights, or
    e.  to the area extending from the line of mean low tide to the line of vegetation, or the rights of access to that area or easement along and across that area.

    (Applies to the Owner's Policy only.)

5.  Standby fees, taxes and assessments by any taxing authority for the year **2024**, and subsequent years; and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership, but not those taxes or assessments for prior years because of an exemption granted to a previous owner of the property under Section 11.13, Texas Tax Code, or because of improvements not assessed for a previous tax year. (If Texas Short Form Residential Loan Policy of Title Insurance (T-2R) is issued, that policy will substitute "which become due and payable subsequent to Date of Policy" in lieu of "for the year ____ and subsequent years.")

6.  The terms and conditions of the documents creating your interest in the land.

7.  Materials furnished or labor performed in connection with planned construction before signing and delivering the lien document described in Schedule A, if the land is part of the homestead of the owner. (Applies to the Loan Title Policy binder on Interim Construction Loan only, and may be deleted if satisfactory evidence is furnished to us before a binder is issued.)

8.  Liens and leases that affect the title to the land, but that are subordinate to the lien of the insured mortgage.  (Applies to Loan Policy (T-2) only.)

9.  The Exceptions from Coverage and Express Insurance in Schedule B of the Texas Short Form Residential Loan Policy of Title Insurance (T-2R). (Applies to Texas Short Form Residential Loan Policy of Title Insurance (T-2R) only.) Separate exceptions 1 through 8 of this Schedule B do not apply to the Texas Short Form Residential Loan Policy of Title Insurance (T-2R).

10. The following matters and all terms of the documents creating or offering evidence of the matters (We must insert matters or delete this exception.):

    a.  **All leases, grants, exceptions or reservations of coal, lignite, oil, gas and other minerals, together with all rights, privileges and immunities relating thereto, appearing in the Public Records whether listed in Schedule B or not.  There may be leases, grants, exceptions or reservations of mineral interest that are not listed.**

b. All leases, grants, exceptions or reservations of the geothermal energy and associated resources below the surface of the land, together with all rights, privileges, and immunities relating thereto, appearing in the Public Records whether listed in Schedule B or not. There may be leases, grants, exceptions or reservations of the geothermal energy and associated resources below the surface of the land that are not listed.

c. All visible and apparent easements or uses and all underground easements or uses, the existence of which may arise by unrecorded grant or by use.

d. Rights of parties in possession.

e. Rights of tenants, as tenants only, under unrecorded leases or rental agreements.

f. Any portion of subject property lying within the boundaries of a public or private roadway whether dedicated or not.

g. Consequence of failure to comply with Texas Law or City and/or County of Victoria Ordinance(s) concerning subdivision of property. (owners title policy only)

h. All oil, gas and other minerals of every character in and under the herein described property, reserved by Polly Henry New Estate, et al, in instrument recorded at Official Records Instrument No. 200207444 in the Office of the Victoria County Clerk, reference to which instrument is here made for all purposes. Title to said interest has not been investigated subsequent to the date of the aforesaid instrument.

i. All oil, gas and other minerals of every character in and under the herein described property, reserved by Polly Henry New et al, in instrument recorded at Official Records Instrument No. 200102623 in the Office of the Victoria County Clerk, reference to which instrument is here made for all purposes. Title to said interest has not been investigated subsequent to the date of the aforesaid instrument.

j. Easement and/or right-of-way as set forth and granted to Arnecke Family Limited Partnership, from the Speck and Polly New Charitable Foundation, Inc., by instrument dated April 24, 2009, and recorded at Official Records Instrument No. 200904264 in the Office of the Victoria County Clerk, reference to which instrument is here made for all purposes.

k. Terms, conditions and stipulations contained in Surface Road Easement, effective 4-24-2009 executed by the Speck and Polly New Charitable Foundation Inc. to Arnecke Family Limited Partnership and recorded at Official Records Instrument No. 200904264 in the office of the Victoria County Clerk.


Tract 1 only:

l. Easement and/or right-of-way as set forth and granted to Delhi Gas Pipeline Corporation, from Genevieve Moore et al, by instrument dated July 11, 1977, and recorded in Volume 940, page 219 of the Deed Records of Victoria County, Texas, reference to which instrument is here made for all purposes.

m. Easement and/or right-of-way as set forth and granted to Double Play Oil and Gas, Inc., from the Speck and Polly New Charitable Foundation, Inc., by instrument dated March 31, 2009, and recorded at Official Records Instrument No. 200906307 in the Office of the Victoria County Clerk, reference to which instrument is here made for all purposes.

n. Easement and/or right-of-way as set forth and granted to SJR Resources, Inc., from The Speck and Polly New Charitable Foundation, Inc., by instrument first acknowledged on December 1, 2009, and recorded at Official Records Instrument No. 201008693 in the Office of the Victoria County Clerk, reference to which instrument is here made for all purposes.

o. Terms, conditions and stipulations of that certain Surface Protection Agreement, between Sue Sherfesee et al and The Speck and Polly New Charitable Foundation, Inc., dated December 15, 2012, recorded at Official Records Instrument No. 201300480 in the Office of the Victoria County Clerk. Title to said interest not checked subsequent to the date of the aforementioned instrument.

p. Unrecorded Easement and/or right-of-way as set forth and granted to Double Play Oil and Gas Inc., from The Specky and Polly New Charitable Foundation Inc., by instrument dated August 18, 2008, reference to which instrument is here made for all purposes. Title to said interest has not been investigated subsequent to the date of the aforementioned instrument.

q. Terms, conditions and stipulations contained in reservation of 60' egress & ingress easement as set forth in Warranty Deed, dated December 23, 2013, executed by Harvey H Mueller to Clint Howard Porperties LLC recorded at Official Records Instrument No 201315407 in the office of the Victoria County Clerk.

r. Easement and/or right-of-way as set forth and granted to Victoria Electric Cooperative Inc, from Eddie R Stubbs Jr, by instrument dated May 21, 2015, and recorded at Official Records Instrument No. 201604836 in the Office of the Victoria County Clerk, reference to which instrument is here made for all purposes. Title to said interest has not been investigated subsequent to the date of the aforementioned instrument.


Tract II only:

s. Tract I: Unrecorded Grazing Lease, dated 1-1-2009 by and between The Speck and Polly New Charitable Foundation Inc. to

David C. Huber et al and a Partial Assignment of Grazing Lease, effective 4-24-2009, executed by The Speck and Polly New Charitable Foundation Inc. to Arnecke Family Limited Partnership and recorded at Official Records Instrument No. 200904262 in the office of the Victoria County Clerk.

t. Tract I: Unrecorded Hunting Lease, dated 8-1-2008, by and between The Speck and Polly New Charitable Foundation Inc. to David C. Huber et al and a Partial Assignment of Hunting Lease, effective 4-24-2009, executed by The Speck and Polly New Charitable Foundation Inc. to Arnecke Family Limited Partnership and recorded at Official Records Instrument No. 200904263 in the office of the Victoria County Clerk.



**COMMITMENT FOR TITLE INSURANCE (T-7)**
**Issued by**
**FIRST NATIONAL TITLE INSURANCE COMPANY**

File No.: **24-812218-VC**

### SCHEDULE C

Your Policy will not cover loss, costs, attorney's fees, and expenses resulting from the following requirements that will appear as Exceptions in Schedule B of the Policy, unless you dispose of these matters to our satisfaction, before the date the Policy is issued:

1.   Documents creating your title or interest must be approved by us and must be signed, notarized and filed for record.

2.   Satisfactory evidence must be provided that:

    a.   no person occupying the land claims any interest in that land against the persons named in paragraph 3 of Schedule A,

    b.   all standby fees, taxes, assessments and charges against the property have been paid,

    c.   all improvements or repairs to the property are completed and accepted by the owner, and that all contractors, sub-contractors, laborers and suppliers have been fully paid, and that no mechanic's, laborer's or materialmen's liens have attached to the property,

    d.   there is legal right of access to and from the land,

    e.   (on a Loan Policy only) restrictions have not been and will not be violated that affect the validity and priority of the insured mortgage.

3.   You must pay the seller or borrower the agreed amount for your property or interest.

4.   Any defect, lien or other matter that may affect title to the land or interest insured, that arises or is filed after the effective date of this Commitment.

5.   **Procedural Rule P-27 as provided for in Article 9.39 of the Texas Insurance Code requires that "Goods Funds" be received and deposited before a Title Agent may disburse from its trust fund account.**

6.   **Item 2, Schedule B will be amended to read "Any shortages in area" in the Owner's Title Policy if we are furnished a current survey plat prepared by an approved licensed surveyor who certifies that there are no discrepancies, conflicts in boundary lines, or any encroachment(s), or any overlapping of improvements, and the payment of the additional required premium (15% of the basic rate) for this amendment.**

7.   **"Rights of parties in possession" shown in Schedule B of this commitment will be deleted from the Owner's Title Policy ONLY if an inspection is made and paid for which shows no parties in possession other than the owner or purchaser(s).  If such an inspection is not required, the purchaser(s) must sign a Waiver of Inspection and acknowledge that they understand that the Owner's Title Policy will be issued subject to the rights of parties in possession.**

8.   **Company requires a legible copy of current drivers license or other positive proof of identification of the parties to the closing.**

9.   **Upon determination that the proposed insured property is being assessed for tax purposes other than agricultural and at a fair market value and the payment of the additional premium required for this amendment, Item 3, Schedule B will be amended to read as follows in the Lender's Title Policy: "Taxes for the year 2024, and subsequent years, not yet due and payable."**

10.  **Item 2, Schedule B will be amended to read "Any shortages in area" in the Lender's Title Policy if we are furnished**

a survey prepared by an approved licensed Surveyor who certifies that there are no discrepancies, conflicts in boundary lines, or any encroachments, or any overlapping of improvements.

11.   If the proposed transaction requires reporting to the Internal Revenue Service pursuant to the Tax Reform Act of 1986, we will require that each seller provide their tax identification number (for most individuals this will be their social security number) and their permanent address.

12.   Affidavit as to Debts, Liens, Facts and Indemnity Agreement must be executed by the Sellers and/or Borrowers and furnished to the company. If any matter is revealed in the Affidavit, the title insurance policy or policies will be issued subject to such matters or other requirements with respect to the issuance of any policy will be made by the company. If a tenant or any other person is revealed to be in possession of or occupying the property, an exception to such tenant's rights will be made in any policy issued unless proper subordination has been executed by said party or parties.

13.   Note: For Informational Purposes: If a Loan Policy contemplated by this commitment is subsequently issued to the proposed lender shown on Schedule A, at the request of the proposed lender, upon the issuance of the Loan Policy the insured lender of Schedule A of the mortgagee policy will appear as follows: (Name of Proposed Lender), and each successor in ownership of the indebtedness secured by the insured mortgage, except a successor who is an obligor under the provisions of Section 12(c) of the Conditions and Stipulations.

14.   Notice of Lis Pendens styled Cinch Energy Services, LLC and Michael R Mendietta, as Plaintiff, versus Los Cabos Ranch, LLC and others, as Defendant, filed January 12, 2024, recorded in Instrument No 202400270, Official, Real Property Records, Victoria County, Texas, under Cause No. 2208-16731, 135th Judicial District Court, Jackson County, Texas. Company requires suit be dismissed with prejudice or release of lis pendens be filed.

15.   General Index search shows Bankruptcy proceedings filed April 8, 2024 under Case No. 5:24-ap-05011, Chapter 7, Texas Western Bankruptcy Court involving Los Cabos Ranch, LLC and others, Company requires proof that subject property was abandoned by the Bankruptcy Court or that the property has been set aside as exempt. If the property is sold through the Bankruptcy Court, Company requires an order from the court authorizing the specific transaction. Company may make additional requirements upon review of said documents.

16.   General Index search shows Bankruptcy proceedings filed December 13, 2023 under Case No. 5:23-bk-51742, Chapter 7, Texas Western Bankruptcy Court involving Cinch Wireline Services, LLC. Company requires proof that subject property was abandoned by the Bankruptcy Court or that the property has been set aside as exempt. If the property is sold through the Bankruptcy Court, Company requires an order from the court authorizing the specific transaction. Company may make additional requirements upon review of said documents.

17.   Vendor's Lien in Deed from Eddie R. Stubbs, Jr, a single person to Los Cabos Ranch LLC , dated January 27, 2021, filed January 28, 2021, recorded in 202101324, Official Records, Victoria County, Texas, securing R Bank, a Texas State Bank  in the payment of a note in the principal sum of $1,080,000.00; said Note being additionally secured by Deed of Trust dated January 27, 2021, filed January 28, 2021 executed by Los Cabos Ranch LLC, to Mike Shaw, Trustee, recorded in 202101325, Official Records, Victoria County, Texas; and all terms and provisions contained therein, including, but not limited to, any additional indebtedness secured by said instrument.

18.   Deed of Trust from Los Cabos Ranch LLC to Mike Shaw, Trustee, for the benefit of R Bank, a Texas State Bank, securing a note in the original principal sum of $572,000.00, dated December 17, 2021, filed December 20, 2021, recorded in 202115445, Official Records, Victoria County, Texas, and all terms and provisions contained therein, including, but not limited to, any additional indebtedness secured by said instrument.

19.   The company may make other requirements or exceptions upon its review of any requested documentation or of the proposed documents creating the estate or interest to be insured or otherwise ascertaining details of the transaction.

By:
_____
Authorized Signatory

## SCHEDULE D

Pursuant to the requirements of Rule P-21, Basic Manual of Rules, Rates and Forms for the Writing of Title Insurance in the State of Texas, the following disclosures are made:

1. As to each Commitment for Title Insurance, the issuing Title Insurance Company, **First National Title Insurance Company**, a Texas corporation, shall disclose:

   (a) Each shareholder owning or controlling, directly or indirectly, ten percent (10%) or more of the share of the Title Insurance Company; there shall also be disclosed all individuals, partnerships, corporations, trusts or other entities owning ten percent (10%) or more, of these entities directly owning ten percent (10%), or more, of the Title Insurance Company: William C. Shaddock - Texas National Holding, LLC and Shaddock Holding Company, Inc.

   (b) Directors: William C. Shaddock, J. Christopher Phillips, Mark E. Mitchell, Patrick G. McMillan, Jr., William C. Shaddock, Jr., Billy Vaughn, Andrew Shaddock

   (c) Officers:  William C. Shaddock, Chairman; J. Christopher Phillips, Chief Executive Officer; Chad Hansen, President; Patrick G. McMillan, Jr., Treasurer and Controller; Heather Riddle, Interim Chief Financial Officer;  David Hays, Secretary and Vice President; Geri S. Hosterman, Senior Vice President; Errin H. Froggatt, Senior Vice President; Donald O. Horn, Senior Vice President; Ellen T. Wied, Senior Vice President; Cheri R. Swanson, Senior Vice President and Jennifer Shaw, Senior Vice President.

2. As to each Commitment for Title Insurance issued by **Capital Title of Texas, LLC dba Crossroad Title** shall disclose:

   (a)  A Listing of each shareholder, owner, partner, or other person having, owning or controlling one percent (1%) or more of the Title Insurance agent that will receive a portion of the premium.

   **Shareholder/Owners:**

   Title Acquisition Associates LLC - 95%
   Shaddock American Title - 5%

   (b)  A Listing of each shareholder, owner, partner, or other person having, owning or controlling ten percent (10%) or more of an entity that has, owns or controls one percent (1%) or more of the Title Insurance Agent that will receive a portion of the premium.

   (c) If the Agent is a corporation:  (i) the name of each director of the Title Insurance Agent, and (ii) the names of the President, the Executive or Senior Vice-President, the Secretary and the Treasurer of the Title Insurance Agent

   **Directors/Officers: Directors:**

   William C. Shaddock

   **Officers:**

   William C. Shaddock, President and CEO; Laura Dawn Neill, Vice President- Agency; Tracy Robirds-McMahon, Vice President- Operations; Jason Schnell, Vice President- Chief Information Officer; Tracy Monts-Curtis, Vice President- Residential Business Development; Russell Conner, Vice President- Plant Manager and Chief Compliance Officer; Patrick McMillan, Vice President- Chief Financial Officer.

   (d) The name of any person who is not a full-time employee of the Title Insurance Agent and who receives any portion of the title insurance premium for services performed on behalf of the Title Insurance Agent in connection with the issuance of a title insurance form; and, the amount of premium that any such person shall receive.

   (e) For purposes of this paragraph 2, "having, owning or controlling" includes the right to receipt of a percentage of net income, gross income, or cash flow of the Agent or entity in the percentage stated in subparagraphs (a) or (b).

3. As to each Commitment for Title Insurance, the following language shall be included in each Schedule D, together with all required information included within the blanks contained below.

You are entitled to receive advance disclosure of settlement charges in connection with the proposed transaction to which this Commitment relates.  Upon your request, such disclosures will be made to you.  Additionally, the name of any person, firm, or corporation receiving any sum from the settlement of this transaction will be disclosed on the closing or settlement statement.

You are further advised that the estimated title premium* is:

| | |
|---|---|
| Owner's Policy | **$14,235.00** |
| Loan Policy | **$0.00** |
| Endorsement Charges | **$0.00** |
| Other | **$0.00** |
| | |
| Total | **$14,235.00** |

Of this amount 15% will be paid to the policy issuing Title Insurance Company, 85% will be retained by the issuing Title Insurance Agent; and the remainder of the estimated premium will be paid to the other parties as follows:

AMOUNT                                    TO WHOM                                    FOR SERVICES


*The estimated premium is based upon information furnished us as the date of this Commitment for Title Insurance.  Final determination of the amount of premium will be made at closing in accordance with the Rules and Regulations adopted by the Commissioner of Insurance:



## DELETION OF ARBITRATION PROVISION

### (Not applicable to the Texas Residential Owner's Policy)

Arbitration is a common form of alternative dispute resolution. It can be a quicker and cheaper means to settle a dispute with your Title Insurance Company. However, if you agree to arbitrate, you give up your right to take the Title Insurance Company to court and your rights to discovery of evidence may be limited in the arbitration process. In addition, you cannot usually appeal an arbitrator's award.

**Your policy contains an arbitration provision (shown below). It allows you or the Company to require arbitration if the amount of insurance is $2,000,000 or less. If you want to retain your right to sue the Company in case of a dispute over a claim, you must request deletion of the arbitration provision before the policy is issued. You can do this by signing this form and returning it to the Company at or before the closing of your real estate transaction or by writing to the Company.**

**The arbitration provision in the Policy is as follows:**

"Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured, unless the Insured is an individual person (as distinguished from an Entity). All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction."

| | |
|---|---|
| SIGNATURE | DATE |

| | |
|---|---|
| **CAPITAL TITLE OF TEXAS, LLC DBA CROSSROAD TITLE** | **24-████VC** |
| NAME OF TITLE AGENT | GF NUMBER OR FILE NUMBER |



# Privacy Policy Notice

## PURPOSE OF THIS NOTICE

Title V of the Gramm-Leach-Bliley Act (GLBA) generally prohibits any financial institution, directly or through its affiliates, from sharing nonpublic personal information about you with a nonaffiliated third party unless the institution provides you with a notice of its privacy policies and practices, such as the type of information that it collects about you and the categories of persons or entities to whom it may be disclosed. In compliance with the GLBA, we are providing you with this document, which notifies you of the privacy policies and practices of First National Title Insurance Company

We may collect nonpublic personal information about you from the following sources:

- Information we receive from you such as on applications or other forms.
- Information about your transactions we secure from our files, or from our affiliates or others.
- Information we receive from a consumer reporting agency.
- Information that we receive from others involved in your transaction, such as the real estate agent or lender.

**Unless it is specifically stated otherwise in an amended Privacy Policy Notice, no additional nonpublic personal information will be collected about you.**

We may disclose any of the above information that we collect about our customers or former customers to our affiliates or to nonaffiliated third parties as permitted by law.

We also may disclose this information about our customers or former customers to the following types of nonaffiliated companies that perform marketing services on our behalf or with whom we have joint marketing agreements:

- Financial service providers such as companies engaged in banking, consumer finance, securities and insurance.
- Non-financial companies such as envelope stuffers and other fulfillment service providers.

WE DO NOT DISCLOSE ANY NONPUBLIC PERSONAL INFORMATION ABOUT YOU WITH ANYONE FOR ANY PURPOSE THAT IS NOT SPECIFICALLY PERMITTED BY LAW.

We restrict access to nonpublic personal information about you to those employees who need to know that information in order to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

# WHAT DOES CAPITAL TITLE OF TEXAS, LLC DO
# WITH YOUR PERSONAL INFORMATION?

Federal and applicable state law and regulations give consumers the right to limit some but not all sharing. Federal and applicable state law regulations also require us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand how we use your personal information. This privacy notice is distributed on behalf of Capital Title of Texas, LLC, pursuant to Title V of the Gramm-Leach-Bliley Act (GLBA).

The types of personal information we collect and share depend on the product or service that you have sought through us. This information can include social security numbers and driver's license number.

All financial companies, such as Capital Title of Texas, LLC need to share customers' personal information to run their everyday business—to process transactions and maintain customer accounts. In the section below, we list the reasons that we can share customers' personal information; the reasons that we choose to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Do we share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**— to process your transactions and maintain your account. This may include running the business and managing customer accounts, such as processing transactions, mailing, and auditing services, and responding to court orders and legal investigations. | Yes | No |
| **For our marketing purposes**— to offer our products and services to you. | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes**— information about your transactions and experiences. Affiliates are companies related by common ownership or control. They can be financial and nonfinancial companies. | Yes | No |
| **For our affiliates' everyday business purposes**— information about your creditworthiness. | No | We don't share |
| **For our affiliates to market to you** | Yes | No |
| **For nonaffiliates to market to you.** Nonaffiliates are companies not related by common ownership or control. They can be financial and nonfinancial companies. | No | We don't share |

We may disclose your personal information to our affiliates or to nonaffiliates as permitted by law. If you request a transaction with a nonaffiliate, such as a third party insurance company, we will disclose your personal information to that nonaffiliate.

## Sharing practices

| | |
|---|---|
| **How often does Capital Title of Texas, LLC Notify me about their practices?** | We must notify you about our sharing practices when you request a transaction. |
| **How does Capital Title of Texas, LLC protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal and state law. These measures include computer, file, and building safeguards. |
| **How does Capital Title of Texas, LLC collect my personal information?** | We collect your personal information, for example, when you<br>• request insurance-related services<br>• provide such information to us<br><br>We also collect your personal information from others, such as the real estate agent or lender involved in your transaction, credit reporting agencies, affiliates or other companies. |
| **What sharing can I limit?** | Although federal and state law give you the right to limit sharing (e.g., opt out) in certain instances, we do not share your personal information in those instances. |

## Contact Us

If you have any questions about this privacy notice, please contact us at: Capital Title of Texas, LLC, 2400 Dallas Parkway, Suite 560, Plano, Texas 75093

# AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT
## NOTICE TO PARTIES
### (Pursuant to 24CFR3500, Appendix "D")

| | | |
|---|---|---|
| To: | Buyer/Borrower: | **MIKE HINES and JANE HINES** |
| | Seller: | **LOS CABOS RANCH, LLC** |
| From: | **Capital Title of Texas, LLC** | |
| Property: | **6479 SAN ANTONIO RIVER RD, VICTORIA, TX, 77905** | |
| Date: | **August 2, 2024** | |

This is to give you notice that Capital Title of Texas, LLC ("CTOT"), has a business relationship with United Tax Service, Inc.; United E-Recording, LLC; Premier Surveying, LLC; Cambridge Insurance Agency, LLC; Willow Bend Mortgage Company, LLC; Capital National Financial, Inc.; Shaddock & Associates, PC; Mint Title, LLC* (*as to assets only); Southwest Title Company; Homeward Title, LLC; Crossroads Abstract & Title Company, Inc.* (*as to assets only); Landmark Assurance Agency of Arizona, LLC; Landmark Assurance Agency of Nevada, LLC; Valleywide Title Agency, LLC; US Title Insurance Agency, LLC; GPS Title, Inc., dba Porter Title Company; Shaddock Settlement Services, LLC; Capital National Holdings, LLC; Continental Title; Eagle Title of Palo Pinto County, Inc.*; Blackacre Title Company*; Primrose Title, LLC; Texas Living Title, LLC; TS Title, LLC; Don W. Ledbetter, PLLC; Texas One Title, LLC; Santa Fe Title Company, Inc.; Homestead Title and Escrow, Inc.; Meadows Title Agency, LLC; Reno Title Agency, LLC; Sunbelt Title, LLC (*as to assets only) and First National Exchange Company, LLC (referred to collectively as "ENTITIES"), 2400 N. Dallas Parkway, Suite 560, Plano, Texas 75093, (972) 682-2700. CTOT routinely obtains Surveys, Tax Certificates, Insurance, and e-Recording Services from the above entities; the charge for these settlement services is paid by the parties to the transaction; that charge is collected by CTOT at closing and paid by CTOT to the entities. The owner of the above entities is William C. Shaddock, who, in addition to being indirectly involved with CTOT as an owner, is also its President, CEO and a Director. Because of this relationship, the referral of business to the above entities by CTOT may provide CTOT with a financial or other benefit.

Notice is also given that CTOT has a business relationship with First National Title Insurance Company ("FNTI"), which is a title insurance underwriting company. The owner of CTOT is also the owner of FNTI. Because of this relationship, the referral of business to FNTI by CTOT may provide CTOT with financial or other benefit. The premium charges made by FNTI are in accordance with the premium rates promulgated by the Texas Department of Insurance.

Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use the listed provider as a condition for the purchase, sale, or refinance of the subject property.

THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| | |
|---|---|
| United Tax Service, Inc. | Range of Estimated charges: $67.00 – 87.00 |
| United E-Recording, LLC | Range of Estimated charges: $4.00 - 10.00 per recorded document |
| Premier Surveying, LLC | Range of Estimated charges: $ (depends on property size and type) |
| Cambridge Insurance Agency, LLC | |
| Willow Bend Mortgage Company, LLC | |
| Capital National Financial, Inc. | |
| Shaddock & Associates, PC | |
| Mint Title, LLC* | |
| Southwest Title Company | |
| Homeward Title LLC | |
| Crossroads Abstract & Title Company, Inc.* | |
| Landmark Assurance Agency of Arizona, LLC | |
| Landmark Assurance Agency of Nevada, LLC | |
| Valleywide Title Agency, LLC | |
| US Title Insurance Agency, LLC | |
| GPS Title, Inc., dba Porter Title Company | |

Shaddock Settlement Services, LLC
Capital National Holdings, LLC
Continental Title
Eagle Title of Palo Pinto County, Inc.*
Blackacre Title Company *
Primrose Title, LLC
Texas Living Title, LLC
TS Title, LLC
Don W. Ledbetter, PLLC
Texas One Title, LLC
Santa Fe Title Company, Inc.
Homestead Title and Escrow, Inc.
Meadows Title Agency, LLC
Reno Title Agency, LLC
Sunbelt Title, LLC
First National Exchange Company, LLC

_____

**MIKE HINES**

_____

**JANE HINES**

**LOS CABOS RANCH, LLC**

_____

**By MARK LOPEZ**

# CONSUMER ALERT!

## Don't Become a Victim of Wire Fraud!

### BE AWARE:

Did you know the real estate industry as a whole is seeing a significant rise in attempts to defraud consumers by hacking email accounts and providing instructions to wire funds to incorrect accounts?

### BEST PRACTICES:

Any party to a transaction that receives an email containing wiring instructions should call the sender to verbally verify the instructions before wiring funds. It is best that you contact the sender on a phone number that has been verified outside of the email in which the wiring instructions were received.

**1** Contact Capital Title

**2** Verify Wiring Instructions

**3** Wire Funds to Escrow Account



Capital Title of Texas, LLC dba Crossroads Title - Victoria Crossroads
102 N. Main
Victoria, TX 77901
Phone 361-573-5268

If you have difficulty sending funds to Capital please notify Dacia Ruby at druby@ctot.com.