**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 23-51742-cag |
| CINCH WIRELINE SERVICES, LLC | § | |
| Debtor | § | Chapter 7 |
| | § | |
| JOHN PATRICK LOWE, CHAPTER 7 | § | |
| TRUSTEE FOR CINCH WIRELINE | § | |
| SERVICES, LLC | § | |
| Plaintiff | § | |
| | § | Adversary 24-05011-cag |
| v. | § | |
| | § | |
| CINCH ENERGY SERVICES, LLC; | § | |
| CINCH INVESTMENT HOLDINGS, LLC; | § | |
| CES GROUP HOLDINGS, LLC; HOOK N | § | |
| BULL PROPERTIES, LLC; LOS CABOS | § | |
| RANCH, LLC; FTS RANCH, LLC; FTSJR | § | |
| HOLDINGS, LLC; WFO HOMES, LLC; | § | |
| TEXAS COAST BUILDERS, LLC; 17 | § | |
| MAIN, LLC; GRANDER HOLDINGS, | § | |
| LLC; WFO, LLC; PONDER RANCH, | § | |
| LLC; BL EQUITY HOLDINGS, | § | |
| LLC; OCEAN FLOOR HOLDINGS, LLC; | § | |
| FRANK THOMAS SHUMATE; MARK | § | |
| LOPEZ; LORETTA L. HIGGINS; | § | |
| TIMOTHY GAINES POLLARD; JERRY | § | |
| MILLER and such other yet unknown | § | |
| Defendants ("JOHN DOE DEFENDANTS") | § | |
| Defendants | § | |

# AMENDED
## MOTION FOR SANCTIONS AND AWARD OF DAMAGES FOR KNOWING AND INTENTIONAL VIOLATIONS OF THIS COURT'S ORDERS AND THE AUTOMATIC STAY
### [Related to Dkt #66 and Dkt# 112]

This pleading requests relief that may be adverse to your interests. A final hearing on the Motion for Sanctions is to be held on **Wednesday, August 14, 2024, at 10:00 am in the United States Bankruptcy Court, Western District of Texas (San Antonio Division), 5th floor courtroom located at 615 Houston St. San Antonio, Texas.**

TO THE CHIEF UNITED STATES BANKRUPTCY JUDGE CRAIG A. GARGOTTA:

John Patrick Lowe, Chapter 7 Trustee for Cinch Wireline Services, LLC ("Plaintiff," "Trustee," or "Cinch Wireline") files this AMENDED Motion for Sanctions and Award of Damages for Knowing and Intentional Violations of This Court's Order entered on April 11, 2024 (Dkt #8) and further extended by Order of this Court on April 26, 2024 (Dkt #52) and the Agreed Order Granting Preliminary Injunction entered on June 4, 2024 (Dkt # 148) and the Orders and stipulations compelling production of documents by Defendants Frank Thomas Shumate ("Shumate") and Loretta L. Higgins ("Higgins") at the Debtor's Corpus Christi Facility and Yard on April 26, 2024, and continued violations of both the Automatic Stay and the Orders of this Court, and would show as follows:

## I.
## PRELIMINARY STATEMENT

1.      The Trustee files this Amended Motion updating the Court on events that have been ongoing after the Court entered its Interim Order Granting Expedited Motion For Sanctions [Dkt # 113], and Trustee incorporates its Expedited Motion For Sanctions and Award of Damages For Kowing and Intentional Violation of This Court's Temporary Restraining Order [Dkt #66] and its Supplement To The Motion For Sanctions [Dkt # 112] and any exhibits and declarations attached to those motions, as if fully set out herein.

2.      This Court has heard testimony and admitted business records evidence of significant and intentional violations of the automatic stay arising from the voluntary Chapter 7 Petition of Cinch Wireline Services, LLC ("Debtor" or "Cinch Wireline") as well as direct evidence of intentional destruction of the Debtor's books and records, of removing computers and instructing destruction of digital data, of moving and hiding the Debtor's equipment, of converting the name "Cinch Wireline" to a newly formed LLC, CES Group Holdings, LLC by Tom Shumate, with the assistance of Loretta Higgins, Tim Pollard, and Martin Kroesche, now using the d/b/a "Cinch Wireline," and the actual continuation of the wireline business previously conducted by

the Debtor (secretly up to February 24, 2024) and after the formation of CESGH, the continuation

of the Debtor's business by CESGH.

3.      As the Court is aware, the Trustee has had a fight at every turn in trying to get

compliance with Subpoenas and this Court's orders.

A history of the Court's involvement follows:


**1/24/24 – SUBPOENA ISSUED BY TRUSTEE TO LORETTA HIGGINS**

**2/26/24 – MOTION TO ENFORCE SUBPOENA DUCES TECUM TO LORETTA L. HIGGINS, CPA (DKT #39 MAIN CASE)**

**4/3/24 - ORDER GRANTING TRUSTEE'S MOTION TO ENFORCE SUBPOENA DUCES TECUM TO LORETTA HIGGINS (DKT #65 – MAIN CASE)**

**4/11/24 – TEMPORARY RESTRAINING ORDER AND ORDER SETTING HEARING ON PRELIMINARY INJUNCTIVE RELIEF (DKT #8)**

**4/30/24 – ORDER REQUIRING IN-PERSON APPEARANCE OF DEFENDANT FRANK THOMAS SHUMATE**

**5/3/24 - ORDER REQUIRING PRODUCTION OF BUSINESS RECORDS (DKT #81)**

**5/10/24 – INTERIM ORDER GRANTING PRELIMINARY INJUNCTIVE RELIEF AND PROVIDING FOR A FINAL PRELIMINARY INJUNCTION (DKT #96)**

**6/5/24 - AGREED ORDER GRANTING PRELIMINARY INJUNCTION (DKT #148)**

4.      The evidence is admitted that in November 2024, the Debtor was a going concern

operating primarily out of the Corpus Christi facility, with more than 30 field employees,

significant income and business, and substantial assets exceeding $16,307,431.24 [*See*, Debtor's

Exhibit 68 Cinch Wireline Assets and costs, authenticated and verified by both Stacie Lopez

Tomas and Loretta Higgins, CPA].

5.      Financial records created and kept by Loretta Higgins establish that in the first four months of 2023, the Debtor had Construction" revenues totaling $7,497,921.43.  *See*, Debtor's Exhibit 25 Cinch Wireline Services Condensed Statement of Operations, Monthly Numbers 2023, authenticated and verified by both Stacie Lopez Tomas and Loretta Higgins, CPA].  No other Cinch Wireline related affiliate did any "wireline" work.   Based on information and belief, the Debtor had in excess of $20,000,000.00 in revenues in 2023.

6.      In stark contrast, the evidence in this case also includes the Debtor's Schedules and Statements filed showing, 13 days later, on December 13, 2024, petition date (the "Petition Date"), a Debtor having no assets and no operations; in other words, a "no asset" case.  Remarkably, the Schedule of Assets was amended on April 29, 2024, and signed by Frank Thomas Shumate, Jr., listing zero assets (no hard assets, no cash, no accounts receivables, *etc*.).  What has been discovered by the Trustee is that a new enterprise somehow began doing business as "Cinch Wireline" with its operations wholly unreported to the Trustee, but using the same "Cinch Wireline Services, LLC's" (the Debtor's) employees, assets, customers, vendors, and management but now by a newly formed limited liability company "CES Group Holdings, LLC" owned and formed by Shumate.

7.      Since mid-December 2023, the Trustee has diligently attempted to obtain information about the Debtor, its business records, its assets, and its operations but was stone-walled at every effort, even when ordered to do so by this Court.  Incredibly, the Debtor's vice-president, Tim Pollard (who signed the verified Schedules and Statements), had no knowledge of assets or even bank accounts of the Debtor, all while Shumate (and pursuant to his direction and instructions), Higgins, Pollard, and others have moved and hidden Debtor's assets, burned the Debtor's business records, hidden and refused to turn over computers containing Debtor's business

records, and refused to accept and actively dodged service of this Court's Subpoenas for records and appearances to testify about these activities. Pollard has refused to testify by pleading the Fifth Amendment arising from a federal indictment for failure to pay over 940-941 withholding taxes for an entity not involved with this case or this Debtor.

8.      The recent stipulations and this Court's Order to turn over all records of the Debtor needed by the Debtor and located at the Debtor's Corpus Christi yard was initially no such production but simply a continuation of the obstruction of this Trustee's efforts to understand the Debtor's estate. After traveling to the Corpus Christi Yard on April 26, 2024, under Order of this Court, the Trustee's counsel was met by Shumate's lawyer (Paul O'Finan), who immediately refused Trustee's counsel access to the Debtor's business office to review and pick up records of the Debtor, refused access to the conference room where the Debtor's computers were kept (claiming Shumate that morning instructed him to deny access).

9.      Additionally, Mr. O'Finan had the police called to escort Trustee's counsel for the remaining efforts to find and take possession of the Debtor's books and records (apparently to ensure that no view of the Debtor's own offices would be permitted). In short, after being told by Shumate's lawyer O'Finan that the records only consisted of approximately 14 small bankers-boxes of information, and after defying O'Finan's demand not to walk around the yard or go into any building except the three small rooms initially directed and instructed by lawyer O'Finan, Trustee's counsel discovered another office at the back of the yard (an office Higgins referred to as the "Way-Back Office") containing substantial employee records, including the records Higgins testified did not exist (Michael Mendietta's employment records). Finally, Debtor's counsel discovered what appeared to the police as a second burn pit.

10.     This refusal to turn over records, physical blocking of the Trustee's counsel in his

efforts to discover assets and records of the estate in the Debtor's own business office, and failure to provide computer access are in contempt of this Court and amount to obstruction of justice:

**18 U.S. Code § 1509 - Obstruction of Court Orders**

Whoever, by threats or force, willfully prevents, obstructs, impedes, or interferes with, or willfully attempts to prevent, obstruct, impede, or interfere with, the due exercise of rights or the performance of duties under any order, judgment, or decree of a court of the United States, shall be fined under this title or imprisoned not more than one year, or both.

11.     This obstruction, amounting to obstruction of justice, required the Trustee to return, yet again, to this Court to seek compliance with the Orders of the Court and seek further Orders. After this hearing, the Court entered an Order Requiring Production of Business Records [Dkt #81]. It was only after this hearing that the Trustee began to acquire access to the complete paper set of records of the Debtor and began to gain access to the computer records of the Debtor.

12.     As the Court will recall, it was only after the Court Ordered Shumate to turn over information to the Trustee or face detainment by U.S. Marshalls, present at the Court's request in the courtroom, that the Trustee began to learn of information related to the Midland yard.

13.     The continued blocking by Defendants of the Trustee from access to the truth illustrates the extent to which Defendants have no regard for this Court's Orders and, more importantly, do not understand the scope of this Court's jurisdiction over the "property of the estate" of this Debtor nor the nationwide jurisdiction of this Court to control the abuse and violation of the Bankruptcy Code provisions and this Court's Orders.

14.     A portion of the sanctionable conduct is part of this Court's record of the hearing on the request for an Injunctive relief, and accordingly, it occurred before this Court through testimony, and statements and stipulation of counsel on the record in those proceedings.

## II.
## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 105, 157, and 1334.  Venue is proper pursuant to 28 U.S.C. § 1408.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) arising from the Debtor's filing of its voluntary Petition under Title 11 U.S.C. § 1101, *et seq.* on December 12, 2023.

16.     The statutory predicates for the relief sought herein include sections 105(a) and § 361, 362(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001, 9014, 4001(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Herring Bank

17.     This pleading is filed in the Adversary above-referenced and the Main Case out of which subpoenas have been issued seeking information and documents, and testimony has occurred, including the Section 341 Meetings of Creditors.

### III.
### STATEMENT OF COUNSEL FOR THE TRUSTEE REGARDING EFFORTS TO OBTAIN PRODUCTION PURSUANT TO THIS COURT'S ORDERS

**A.     INITIAL INSPECTION OF THE CINCH WIRELINE CORPUS CHRISTI YARD – APRIL 26, 2024**

18.     On April 26, 2024, this Court entered an Order extending (Dkt #52) its April 11, 2024, Temporary Restraining Order ("TRO"), in part compelling production of *all hard copies and digital copies of the business records* of the Debtor and all Defendants business records if kept by or in the possession of, Ms. Loretta Higgins (the "Business Records").  An agreement was reached and stated on the record before the Court regarding the production of the digital records and the necessary access information (passwords, codes, or special procedures or protocols) to all servers containing the digital records.  Access to digital Business Records requires passwords, log-in information, and procedures for servers and all laptop computers containing the Business Records.  An agreement was also reached that all non-digital copies of the Business Records announced to

the Court that provided for production on April 26, 2024, commencing at 10:00 AM in the Cinch Wireline Services, LLC yard and business offices on Agnes Street, Corpus Christi, Texas.

19.     The stipulation did not include attendance by Shumate's counsel, nor did it include a restriction imposed by Shumate through his counsel that the Trustee could not access the Debtor's offices to obtain business records of the Debtor.  That restriction was unilaterally imposed by Shumate's counsel, O'Finan, when Debtor's counsel traveled to the Corpus Christi yard notwithstanding this Court's Order and the Stipulations.

20.     According to the stipulation, the Trustee was entitled to "all business records the Trustee needed" to commence his work in this case.  Such an order could have no meaning if Shumate and his counsel could restrict Trustee's counsel to only three small rooms in a massive complex including an estimated 7,000 sq. ft. of business offices, over 15,000 sq. ft. of maintenance shops all full of "equipment," "tools,", and inventory which, on information and belief, belong to the Debtor.

21.     However, on arrival, Higgins was not on location but had called and said she would be 10 to 15 minutes late.  Mr. O'Finan was present and instructed that nothing could begin until Ms. Higgins arrived.  Trustee's counsel disagreed and started to enter the Debtor's business office to review the physical location of the stored business records, refusing to be limited to the three small upstairs offices, or by Ms. Higgins' absence.  When Trustee's counsel attempted to enter the business office, Shumate's counsel, O'Finan, stood in front to block the hallway and refused to allow the Trustee's counsel to pass.  Trustee's counsel asked if access required that he "touch" Mr. O'Finan to gain entry, to which the response was, "whatever you need to do," at which time Trustee's counsel returned to the outside of the building.





      22.    At about the same time Ms. Higgins arrived, two Corpus Christi police department cars arrived.  Mr. O'Finan had called the police to ensure that the Trustee's counsel could not gain access to the Debtor's offices.  Mr. O'Finan met with the officers for several minutes and, according to the police, told the police officers that Trustee's counsel was violating an order of this Court by seeking to search for documents and not simply agreeing to restrict his discovery to pick

up designated documents. Both officers told Trustee's counsel that they had been advised that Trustee's counsel was violating a federal court order that did not permit access to the business offices. Thereafter, both officers requested that Trustee's counsel follow Shumate's instructions and not enter the Debtor's office, and thereafter escorted Trustee's counsel in all document retrieval from the three small rooms.

23.      After Trustee's counsel retrieved the almost useless and minimal documents from the three small rooms, Trustee's counsel then, in the presence of both O'Finan and Ms. Higgins, inquired about the office in the back of the yard (250 yards or so away from the front main business office – *See* photo below). Mr. O'Finan said he was unaware of any other business office with records, but when asked, Ms. Higgins admitted that there was one other office that "may have some records." Trustee's counsel demanded access, and at that point, the officers basically stood down from any effort to restrict the Trustee's counsel from the back office. Below is an aerial of the Debtor's Corpus Christi Yard facility showing the front main office and the "Way-Back Office":



24.     When the Way-Back Office was inspected, in fact, substantially more business records were found by Trustee's counsel than were found in the three small offices.  Multiple file cabinets were emptied, multiple desks were accessed and emptied) and significant documents that did not appear to have been pilfered were discovered, including the documents Ms. Higgins had testified did not exist – the employee files on Michael Mendietta.  These were boxed, and possession was taken.

25.     After mentioning the existence of a burn pit to the police officers, on the way back to the main building, the police officers pointed out to Trustee's counsel an area that looked like

disturbed ground where a burn had occurred.  Upon closer inspection, burned paper was found on the surface of the freshly turned dirt such that it appears a second burn pit exists, shown by the following photograph taken during the inspection:



The photo above shows the location of the suspected second burn pit.  Further investigation must be undertaken to determine if this is, in fact, another burn pit unknown to Oscar Loya or the Trustee.

26.     The results of the efforts to retrieve documents, but for the forced disclosure of the "Way-Back Office" documents and a possible second burn pit, were marginal.  The documents to be produced were disorganized, of minimal significance to current or recent operations, and had clearly been selected and isolated (*See*, *e.g*., photo of "Complete ATF" notebook with nothing inside):



27.     As a result of the initial search of the Corpus Christi Yard, the Trustee still had no significant business records (but was promised the passwords and log-in protocols, which were ordered to be produced a week earlier.  Obviously, that was not in compliance with the deadline in the Court's Order) and had no information on the disappearance of all of the Debtor's assets, *counted in November 2023 in the multi-millions of dollars*.  At that time, the Trustee had no access to its own business office, much less the records kept therein.

B.      SECOND INSPECTION OF THE CINCH WIRELINE CORPUS CHRISTI YARD – MAY 7, 2024

28.      As a result of the above-described obstruction and noncompliance with the Court's Temporary Restraining Order [Dkt # 8], the Trustee returned to this Court on May 3, 2024, and presented the failure to comply with the Court.

29.      The Court heard testimony from Shumate at the May 3, 2024 hearing, which clearly established that he had instructed his attorney, Paul O'Finan, to obstruct and restrict access to the Trustee's counsel and to interfere with the Temporary Restraining Order issued by this Court [Dkt # 8].

30.      After hearing evidence during the hearing on May 3, this Court entered another Order, an Order Requiring Production of Business Records [Dkt #81].  This Order required Defendants to grant unfettered access to take control of the books and records of the Defendants, including those cords located at the Corpus Christi yard.

31.      On May 7, 2024, in compliance with this Court's order, the Trustee's counsel, Shelby Jordan, returned to the yard and was allowed to inspect the areas of the building to which he had previously been denied access.  In those areas, Mr. Jordan discovered in excess of fifty (50) boxes of the Debtor's business records, two (2) boxes of the CESGH business records, and miscellaneous CES business records, none of which were part of the initial production. Additionally, Mr. Jordan discovered a computer network server (that contains business records of the debtor, CES, and CESGH, a firewall, numerous backup drives, and numerous laptop computers.

### First & Second Visit to the Agnes Corpus Christi Yard



First Visit
April 26, 2024

30 boxes

April 26, 2024

Shelby Jordan visited the Agnes Yard, spent hours trying to gain access to the records, and Mr. O'Finan obstructed his access to the front offices. After hours of Mr. Jordan tireless effort, he obtained over 30 boxes.



Second Visit
May 7, 2024

80 boxes

May 7, 2024

Shelby Jordan and Chrystal Madden visited the Agnes Yard again and obtained access to the front offices and obtained more than 80 boxes of accounts payable, receivable, employee files, one server, 22 laptops, several backups, one firewall, vehicle keys, vehicle information.

32.     Mr. O'Finan, at the direction of Shumate, knowingly and intentionally interfered with this Court's Order and intentionally violated this Court's Order by denying access to the "real" business records of the Debtor and operating defendants.  It is important to note, however, that a significant amount of the records were burned at Loretta Higgin's direction:

Q       How about the pile. How big was the pile of the burned documents?

A       It was probably two-feet high by three-feet long. And it included –
        and I that's why I said, I know exactly what was burned. We burned duplicate and triplicate copies of employee -- not employee timecards but employee paystubs and the support that was available digitally. We burned duplicates and triplicates of bids from jobs that had closed in 2014 and 2015.

Q       As a CPA, who understood that you were being sought to either give testimony or provide records, did you take that opportunity as you were having these records burned to make a video of everything you were doing so this Court would have the benefit of that?

A       I had no idea I needed to do that.

Q       You're a CPA

A       I'm a CPA and we do -- we get rid of duplicates and triplicates all the time.

Q       By burning them?

A       Burning, shredding are typically the two methods.

THE COURT:      So hold on, hold on.  So are you telling this Court that part of your protocols are when you're destroying records, that you have previously burned records in a manner similar to what's being presented to the Court?

THE WITNESS:     When we have clients that have ten (10) duplicates and triplicates, they are -- you know we, we have -- when their employees' social security numbers are involved, and the shredder onsite is not adequate, we have typically burned the information that has employee social security numbers on it.

THE COURT:      In the manner that was done here, where it was taken to a location, a hole was dug -- Those are the allegations -- the documents were burned and then buried. You're telling me that in the past, you have used this protocol to destroy company records.

THE WITNESS:     I have never done a burn pit.  Typically, it'll be -- I've never dealt with this volume.  It'll be a small fire, you know.

THE COURT:      You're not making sense to be perfectly blunt.  So is your testimony you've never done a burn pit before or is your testimony you've never done a burn pit of this size?

THE WITNESS:     I've never -- we've done a burn barrel.

THE COURT:      A burn barrel. Okay. And you're testifying under penalty of perjury that you authorized the burn barrel to occur and company records were burned?

THE WITNESS:     Duplicates and triplicates of items that were available digitally were -- were sent to burn.

May 3, 2024, Injunction Hearing at P. 73 L.13 – P. 75 L.8.



33.     As the Court correctly noted, once the bankruptcy was filed, the burned records

were the property of the estate:

> [THE COURT:]        Now, I've heard testimony about these were duplicates and
> triplicates of Debtor records or they were Energy's records. No, no. It doesn't work
> that way. Once the bankruptcy was filed, the Trustee came into possession of those
> records. They became property of the estate. I will tell you. I have listened to many
> CPAs testify over my time as a judge. Never have I heard that a CPA took it upon
> him or herself while the bankruptcy was pending to burn documents. That, to me,
> just seems to be absolute dereliction of the responsibility.

May 3, 2024, Injunction Hearing at P. 146 L.15–24.

34.     This burning and destruction of the Debtor's documents amounts to Federal

Obstruction of Justice:

**18 U.S. Code § 1519 - Destruction, Alteration, or Falsification of Records in Federal Investigations and Bankruptcy**

Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

C.      TRUSTEE'S COUNSELS' INSPECTION OF THE MIDLAND OPERATIONS

35.      On Friday June 21, 2024, Trustee's counsel, Shelby Jordan and Butch Boyd, traveled to Midland and inspected the Midland yard and observed operations at the facility.  It was a short but revealing inspection.  The business operating out of the Midland yard is Debtor's pre-petition wireline business using the Debtor's assets.

36.      These assets include the equipment that the Debtor used in its wireline business, the same facility, employees, trucks, logos, phone numbers, clients, and MSAs. The front door of the facility displays the Debtor's name and logo:



37.     Counsel interviewed Israel Rodriguez, whose name appears on the front door, and he confirmed that the business is the same as it was pre-petition.  It never stopped operating and continues to operate today.

###### D.    CONTINUED VIOLATIONS OF THE AUTOMATIC STAY AND THIS COURT'S ORDERS

38.     Shumate, with the assistance of Pollard and Kroesche, has continued to violate the automatic stay and the Orders of the Court, even after this Court entered its Initial Sanctions Order

[Dkt #113]. Shumate has also failed to comply with the Sanctions Order in that he has failed "to allow the replacement of Plaintiff, upon Plaintiffs request, as the only authorized signatory for all withdrawals from any Cinch Wireline Business bank account." See Sanctions Order [Dkt #113 at para vi].

39.     He has caused the operations of the Midland yard to continue and has moved the revenues received from the Debtor's continued business to be transferred for his personal use.

40.     Shumate has also failed to "turnover to Plaintiff, without cashing any checks or depositing any money orders or cash received in the name of the Debtor or received by the Cinch Wireline Business." See Sanctions Order [Dkt # 113 at para vii]. Shumate is blatantly violating this provision by continuing to transfer funds for his personal use.

41.     Shumate has violated this Court's Injunction by transferring money out of enjoined defendants to pay off a revolving line of credit that he continues to use for his personal benefit.

42.     Shumate has directed Tim Pollard to sign a contract for the sale of the Corpus Christi Wireline yard. This was done without notice to the Trustee or this Court.

43.     Shumate has caused entity Defendants enjoined by the Agreed Preliminary Injunction to violate the Injunction by selling real property and taking the proceeds for personal use.

44.     Shumate has further violated the stay and this court's injunction by encumbering real property of the estate with additional debt and using the proceeds for personal use.

## IV.
## ARGUMENTS AND AUTHORITIES

45.     Because bankruptcy courts were created by Congress rather than under Article III of the U.S. Constitution, is no disagreement over whether bankruptcy courts, like other federal courts, have "inherent authority" to impose sanctions for civil contempt on parties that refuse to

comply with their orders. The U.S. Court of Appeals for the Second Circuit, in *In re Markus*, 78 F.4th 554 (2nd Cir. 2023) summarized this authority.[1] In so ruling, the Second Circuit reaffirmed its and other Circuit Courts' earlier decisions concluding that a bankruptcy court has the inherent authority to impose civil sanctions for contempt and the inherent authority to include punitive civil contempt sanctions:

> we hold that a bankruptcy court's inherent sanctioning authority includes the power to impose civil contempt sanctions in non-nominal amounts to compensate an injured party and coerce future compliance with the court's orders. *Id.* at 566.

"The power to punish for contempts is inherent in all courts…." *See Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1874). *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911):

> [T]he power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law…. If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery.")….

46. It is civil contempt that is sought here, and which is designed to preserve and enforce compliance with court orders and to compensate injured parties for losses sustained from noncompliance. *See Downey v. Clauder*, 30 F.3d 681, 685 (6th Cir. 1994). Addressing "contempts," 18 U.S.C. § 401 of the U.S. Code provides:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
> (1)    Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
> (2)    Misbehavior of any of its officers in their official transactions;
> (3)    Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

---

[1] The court of appeals affirmed a bankruptcy court decision imposing sanctions on a chapter 15 debtor's lawyer who repeatedly flouted the court's discovery orders and awarding attorneys' fees to the debtor's foreign representative incurred in bringing a motion for sanctions.

This Bankruptcy Court possesses the power to punish by civil contempt.[2]

47.     A debtor's request for sanctions for violating an order of this Court, including violating this Court's orders and violating the automatic stay (here, seizing, hiding, using, and concealing Debtor's assets), constitutes a contested matter.  As such, it is governed by Federal Rule of Bankruptcy Procedure 9014 and should be commenced by motion thereunder. By bringing such a contested matter, in particular in this Adversary Proceeding, both injunctive relief and sanctions are available. The bankruptcy courts have the power under 11 U.S.C.A. § 105 and Bankruptcy Rule 9020 to impose contempt sanctions for violations of its orders and the same power to punish for violating the automatic stay.  *See, Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999) (citing cases).  Many courts have recognized that bankruptcy courts have civil contempt power flowing not only from "the inherent power of a court to enforce compliance with its lawful orders," but also from section 105(a) of the Bankruptcy Code, which provides that:

> [A bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code].… *No provision of [the Bankruptcy Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent any abuse of process*.

11 U.S.C. § 105(a) (emphasis added).[3]  For instance, if the elements are found, an award of damages under § 362(h) is mandatory, and an award of damages under § 105(a) is discretionary. *Id.*[4]

---

[2]  In addition, if a party fails to comply with a subpoena issued in connection with discovery, Rule 45 of the Federal Rules of Civil Procedure provides that "[t]he court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served , fails without adequate excuse to obey the subpoena or an order related to it. Fed. R. Civ. P. 45(g).

[3] *See In re Walker*, 257 B.R. 493, 496 (Bankr. N.D. Ohio 2001) (citations omitted); *accord In re Roman Cath. Church of Archdiocese of New Orleans*, 2023 WL 4105655, *16 (E.D. La. June 21, 2023); *In re City of Detroit*, 653 B.R. 874, 892 (Bankr. E.D. Mich. 2023); *In re Kwok*, 653 B.R. 480, 489 (Bankr. D. Conn. 2023); *In re Brown*, 2023 WL 4496925, *4 (Bankr. N.D. Ga. July 12, 2023).

[4] *See, also, In re Rhodes*, 155 B.R. 491, 495 (W.D. Ark. 1993) (court affirms an offset of an entire prepetition tax claim of $12,313.92 asserted by the Internal Revenue Service against its liabilities for violating the automatic stay); *In re Chavis*, 213 B.R. 462, 464 (Bankr. E.D.N.C. 1997) (court fined creditor $10,000 for sending certain collection letters

48.     This Court's Agreed Preliminary Injunction, preceded by this Court's TRO [Dkt #8], Order Extending Temporary Injunctive Relief [Dkt #52], the Interim Order Granting Preliminary Injunctive Relief and Providing for a Final Preliminary Injunction [Dkt #96], the Agreed Order Granting Preliminary Injunction [Dkt #148], and Orders from the bench pursuant to stipulations agreed to and imposed on the Debtor's owners and accountants imposed additional restrictions and mandates beyond the automatic stay, including the restriction on refusing to turn over records.  Although there are numerous examples of knowing and intentional violations of the automatic stay, this Motion is directed to such specific violations of this Court's orders (including the removal of "evidence" in the possession of the Whistleblower, evidence of the d/b/a "Cinch Wireline" operations by CESGH in Midland, Texas, as well as photographs and information about the use of the Debtor's equipment and employees, signage, and logos, burning of evidence, and finally, *refusal to allow access to the Debtor's business offices for records retrieval*) and other unlawful or contempt acts.[5]

49.     Plaintiff Trustee believes that sanctions should include an amount deemed necessary not only to compensate for the months-delay in discovering the truth about this debtor but also additional amounts to discourage the named Defendants, including CESGH, from continuing their violations of the automatic stay and this Court's orders.

---

to the debtor); *In re McCormack*, 203 B.R. 521, 30 Bankr. Ct. Dec. (CRR) 45 (Bankr. D. N.H. 1996)($10,000 sanction imposed for failure to delete disallowed attorneys' fees from statements); *Matter of Toll*, 175 B.R. 406, 409 (Bankr. N.D. Ala. 1994) (court awards damages of $1,000 for each of five days, $10,000 punitive damages, plus attorneys' fees against a creditor who removed the debtor's household goods in violation of the automatic stay); and *In re B. Cohen & Sons Caterers, Inc.*, 97 B.R. 808, 816-19 (Bankr. E.D. Pa.), *aff'd in part & remanded in Part*, 108 B.R. 482 (E.D. Pa. 1989), *appeal dismissed*, 908 F.2d 961 (3d Cir. 1990), *clarified on remand*, 1990 WL 2632 (Bankr. E.D. Pa. Jan. 11, 1990), *aff'd*, 124 B.R. 642 (E.D. Pa.), *aff'd*, 944 F.2d 896 (3d Cir. 1991) (debtor awarded $50,000 actual damages, $10,000 punitive damages, the striking of a proof of claim filed in the amount of approximately $270,000, plus attorneys' fees for landlord's destruction of the debtor's property in violation of the automatic stay).
[5] The acts of retaliation of these Individual Defendants and CESGH, including withholding the Whistleblower's paycheck, withholding medical insurance payments for treatments and needed treatments of the Whistleblower and his wife, and firing of the Whistleblower will be addressed in a separate motion.

WHEREFORE, the Trustee for the estate of Cinch Wireline Services, LLC requests that the Court find that cause exists for finding that the named Defendants Frank Thomas Shumate, Jr., Tim Pollard, Loretta Higgins, and the newly formed entity CES Group Holdings, LLC, along with other enjoined Entity Defendants have knowingly and intentionally violated the TRO and orders of this Court as well as automatic stay, and that further injunctive relief and sanctions are appropriate, and the entry of an order, substantially in the form filed along with this Motion (a) granting the Motion, and (b) granting such other and further relief as the Court deems appropriate.

Dated: August 8, 2024

Respectfully submitted,

By:    /s/ *Butch Boyd*
Butch Boyd
State Bar No. 00783694
**BUTCH BOYD LAW FIRM, P.C.**
2905 Sackett Street
Houston, TX 77098
713.589.8477
713.589.8563 (Fax)
Email: butchboyd@butchboydlawfirm.com
Copy to: katrinaboyd@butchboydlawfirm.com

Shelby A. Jordan
St. Bar No. 11016700
Antonio Ortiz
St. Bar No. 24074839
***JORDAN & ORTIZ, P.C.***
500 North Shoreline Blvd., Suite 804
Corpus Christi, TX 78401
Telephone: 361.884.5678
Facsimile: 361.888.5555
Email:    sjordan@jhwclaw.com
            aortiz@jhwclaw.com
Copy to:   cmadden@jhwclaw.com
**SPECIAL COUNSEL FOR JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served to the below, by the CM/ECF system or by electronic mail on August 8, 2024:

**Gabi S Canales**
Canales Law Office
5262 S Staples St.
Suite 100
Corpus Christi, TX 78411          representing
361-887-4700
361-887-4761 (fax)
gabilaw14@gmail.com
  *Assigned: 05/14/2024*

**Michael Mendietta**
*(Interested Party)*

**Mitchell Clark**
Law Offices of J. Mitchell Clark
719 S. Shoreline Boulevard
Corpus Christi, TX 78401          representing
361-882-1612
361-882-3015 (fax)
mitchell@hilliard-law.com
  *Assigned: 07/22/2024*

**Justin Sprencel**
*(Interested Party)*

**Jason Alexander Enright**
Winstead PC
500 Winstead Building
2728 N. Harwood Street
Dallas, TX 75201                 representing
214-745-5844
214-745-5390 (fax)
jenright@winstead.com
  *Assigned: 07/25/2024*

**Simmons Bank**
*(Interested Party)*

**Richard L. Fuqua**
Fuqua & Associates, PC
8558 Katy Freeway
Suite 119
77024                            representing
Houston, TX 77024
713-960-0277
713-960-1064 (fax)
fuqua@fuqualegal.com
  *Assigned: 05/28/2024*

**Loretta L. Higgins**
24030 Tirso River Court
Katy, TX 77493
*(Defendant)*

**R. Javier Guerra**
Ray Pena McChristian, PC
9601 McAllister Freeway, Suite 901
San Antonio, TX 78216
(210) 775-3554
(210) 341-3557 (fax)
jguerra@raylaw.com
 *Assigned: 05/20/2024*

representing

**Jerry Miller**
137 W. Chandler Road
Sarita, TX 78385
*(Defendant)*

**Aaron Matthew Guerrero**
Bond Ellis Eppich Schafer Jones LLP
950 Echo Lane
Suite 120
Houston, TX 77024
713-335-4838
832-740-1411 (fax)
aaron.guerrero@bondsellis.com
 *Assigned: 04/26/2024*

representing

**17 Main, LLC**
c/o Daniel Namvar, Registered
Agent
9135 Hillsboro Dr.
Los Angeles, CA 90034
*(Defendant)*

**Charles A. Newton**
Newtons Law
190 N. Millport Circle
The Woodlands, TX 77382
281-681-1170
281-901-5631 (fax)
chuck@newtons.law
 *Assigned: 05/02/2024*

representing

**Mark Lopez**
52 County Road 2011
Edna, TX 77957
*(Defendant)*

 *Assigned: 05/13/2024*

representing

**Los Cabos Ranch, LLC**
c/o Paul S Kirklin, Registered
Agent
12600 N. Featherwood Drive,
Suite 225,
Houston, TX 77034
*(Defendant)*

**Paul W. O'Finan**
S M Chaudhry, Esq., Attorney at Law
PLLC
14100 San Pedro Ave, Suite 210
San Antonio, TX 78232
(210) 646-9400
(210) 646-0038 (fax)
paul@smcesq.com
 *Assigned: 04/24/2024*
  *TERMINATED: 06/27/2024*

representing

**Frank Thomas Shumate**
6118 King Trail
Corpus Christi, TX 78414
*(Defendant)*

*Assigned: 05/08/2024*

representing

**Timothy Gaines Pollard**
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**WFO Homes, LLC**
c/o Tim Pollard, Registered
Agent
146 Motts Parkway
Marion, TX 78124
*(Defendant)*

**WFO, LLC**
c/o Tim Pollard, Registered
Agent
146 Motts Parkway
Marion, TX 78124
*(Defendant)*

*Assigned: 05/08/2024*

representing

**BL Equity Holdings, LLC**
c/o A Registered Agent, Inc
8 The Green, Suite A
Dover, DE 19901
*(Defendant)*

*Assigned: 05/08/2024*
*TERMINATED: 06/27/2024*

representing

**CES Group Holdings, LLC**
c/o Frank T. Shumate, Registered
Agent
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**Cinch Energy Services, LLC**
Mark Lopez, Registered Agent
1102 S. Second
Ganado, TX 77962
*(Defendant)*

**Cinch Investment Holdings,
LLC**
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**FTS Ranch, LLC**
c/o Frank T Shumate, Jr.,
Registered Agent

2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**FTSJR Holdings, LLC**
c/o Frank T Shumate, Jr.,
Registered Agen
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**Grander Holdings, LLC**
c/o Frank T Shumate, Jr.,
Registered Agent
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**Hook N Bull Properties, LLC**
c/o Frank T. Shumate, Jr.,
Registered Agent
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**Ocean Floor Holdings, LLC**
c/o A Registered Agent, Inc.
8 The Green, Suite A
Dover, DE 19901
*(Defendant)*

**Ponder Ranch, LLC**
c/o Frank T Shumate Jr,
Registered Agent
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**Texas Coast Builders, LLC**
c/o Frank T Shumate Jr.,
Registered Agent
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**Jameson Joseph Watts**
Husch Blackwell LLP

representing

**CES Group Holdings, LLC**
c/o Frank T. Shumate, Registered

111 Congress
Suite 1400
Austin, TX 78701
512-479-1179
512-479-1101 (fax)
jameson.watts@huschblackwell.com
 *Assigned: 06/03/2024*

Agent
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**Cinch Energy Services, LLC**
Mark Lopez, Registered Agent
1102 S. Second
Ganado, TX 77962
*(Defendant)*

**Cinch Investment Holdings, LLC**
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**FTS Ranch, LLC**
c/o Frank T Shumate Jr.,
Registered Agent
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**FTSJR Holdings, LLC**
c/o Frank T Shumate, Jr.,
Registered Agent
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**Frank Thomas Shumate**
6118 King Trail
Corpus Christi, TX 78414
*(Defendant)*

**Grander Holdings, LLC**
c/o Frank T Shumate Jr.,
Registered Agent
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**Hook N Bull Properties, LLC**
c/o Frank T. Shumate, Jr.
Registered Agent
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**Ocean Floor Holdings, LLC**
c/o A Registered Agent, Inc.
8 The Green, Suite A
Dover, DE 19901
*(Defendant)*

**Ponder Ranch, LLC**
c/o Frank T Shumate Jr.,
Registered Agent
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**Texas Coast Builders, LLC**
c/o Frank T Shumate Jr.,
Registered Agent
2200 County Road 413
McCoy, TX 78113
*(Defendant)*

**WFO Homes, LLC**
c/o Tim Pollard, Registered
Agent
146 Motts Parkway
Marion, TX 78124
*(Defendant)*

*/s/ Butch Boyd*
Butch Boyd