

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 09, 2024.**

_____
**CRAIG A. GARGOTTA
CHIEF UNITED STATES BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 23-51742-CAG |
| | § | |
| CINCH WIRELINE SERVICES, LLC., | § | |
| | § | |
| Debtor. | § | CHAPTER 7 |

| | | |
|---|---|---|
| JOHN PATRICK LOWE, Chapter 7 | § | |
| Trustee for Cinch Wireline Services, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Adversary NO. 24-05011-CAG |
| v. | § | |
| | § | |
| FRANK THOMAS SHUMATE, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S AMENDED MOTION FOR SANCTIONS AND AWARD OF DAMAGES FOR KNOWING AND INTENTIONAL VIOLATION OF THIS COURT'S TEMPORARY RESTRAINING ORDER (ECF NO. 211)**

On this date, the Court considers Plaintiff's Amended Motion for Sanctions and Award of

Damages for Knowing and Intentional Violations of this Court's Orders and the Automatic Stay

1

("Amended Motion for Sanctions"). (ECF No. 211).[1] For this ruling, the Court reviewed Plaintiff's Original Complaint (ECF No. 1), Plaintiff's First Amended Complaint (ECF No. 248), Defendant Frank Thomas Shumate's Response to Plaintiff's Amended Motion for Sanctions (ECF No. 225), and Trustee's Corrected Reply to the Response of Defendant Frank Thomas Shumate (ECF No. 231). This Court took the matter under advisement after hearings held on May 3, July 30, and September 17, 2024. For the reasons provided herein, the Court is of the opinion that the Amended Motion for Sanctions should be **GRANTED IN PART** and **DENIED IN PART**.

## JURISDICTION

As a preliminary matter, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), and (H). Further, "a bankruptcy court 'plainly ha[s] jurisdiction to interpret and enforce its own prior orders.'" *In re Lopez*, Nos. 21-10343, 21-10098, 21-10246, 2022 WL 2080187, at *10 (Bankr. E.D. Tex. 2022) (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)). Venue is proper under 28 U.S.C. §§ 1408 and 1409. This case is referred to the Court by the Standing Order of Reference entered in this District and the parties consented to entry of final orders by the Court. (ECF Nos. 162 & 356).

## FINDINGS AND CONCLUSIONS

The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052(a), made applicable to this hearing by Fed. R. Bankr. P. 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

---

[1] "ECF" refers to the electronic case file docket number.

**FACTUAL AND PROCEDURAL HISTORY**

Cinch Wireline Services ("Debtor") filed its chapter 7 petition on December 13, 2023, without schedules or a statement of financial affairs ("SOFA"). (Case No. 23-51742 at ECF No. 1). That same day, John Patrick Lowe was appointed as the chapter 7 trustee ("Trustee") in the case. *Id.* at ECF No. 2. Two weeks later, Debtor filed its schedules and SOFA, signed by Tim Pollard ("Pollard"), indicating no income, no operations, and nominal assets. *Id.* at ECF No. 8. The schedules and SOFA were later amended on April 29, 2024, by Frank Thomas Shumate, Jr. ("Shumate") as Debtor's president. *Id.* at ECF No. 81. Shumate similarly listed Debtor as possessing no income and limited assets. *Id.*

Prior to bankruptcy, Debtor provided fossil fuel services, including the acquisition of seismic data to discover oil and gas reservoirs. Although the schedules (both original and amended) reflect that Debtor is devoid of assets or operations, Trustee asserts Debtor owned $25 million in assets and generated millions in income prior to filing its chapter 7 petition. (ECF No. 248 at 41). Trustee alleges Debtor's assets also included a customer base, accounts receivable, other equipment, and good will. Based on these allegations, Trustee theorizes other entities owned or controlled by Shumate—Cinch Energy Services ("CES") or CES Group Holdings ("CESGH")—are in possession and operating with Debtor's assets. *Id.* at 39–41.

I.  **The Court's Entry of a Temporary Restraining Order**

In early March 2024, Trustee received credible evidence from a whistleblower to support his theory. (ECF No. 1 at 8). The whistleblower alleged Debtor occupied a facility in Corpus Christi where Shumate, through one or several of his entities, conducted operations under the name "Cinch Wireline." (ECF No. 1 at 8–10). The whistleblower also claimed Debtor never ceased its operations; rather, Debtor's business was allegedly transferred from Corpus Christi to

3

Midland under CESGH's name. *Id.* When Trustee attempted to investigate these allegations, the whistleblower asserted Loretta Higgins, the CPA for Debtor and other Shumate controlled entities, instructed employees to burn Debtor's books and records. *Id.* Notably, Trustee previously issued a subpoena to Higgins, requesting the production of Debtor's records. (Trustee's Ex. No. 11). Despite the Court's directive, the whistleblower claimed Higgins continued to organize the destruction of Debtor's property. (ECF No. 1 at 8).

In response, Trustee filed this adversary proceeding on April 8, 2024, against Pollard, Shumate, and multiple Shumate controlled entities, asserting causes of action for fraud, fraudulent transfers and preferences, spoilation of evidence, violation of the automatic stay, and intentional theft and conversion of Debtor's assets. (ECF No. 1).[2] Trustee simultaneously filed a Motion for Temporary Restraining Order ("TRO") with the Complaint which was premised on the destruction of records as evidenced by the whistleblower's testimony. (ECF No. 3). The Court granted Trustee's TRO on April 11, 2024, prohibiting any further destruction of Debtor's books and records, ordering Debtor's remaining documents be turned over to Trustee, and granting Trustee access to Debtor's property in Corpus Christi. (ECF No. 11).

## II.     The Initial Inspection of Debtor's Corpus Christi Location

Pursuant to the Court's TRO, Trustee's counsel inspected Debtor's Corpus Christi location on April 26, 2024, and was initially denied access to the entire premises. (ECF No. 66 at 6). In fact, it appears that Paul O'Finan ("O'Finan"), Shumate's former counsel, actively obstructed Trustee's ability to retrieve Debtor's books and records—all property of the bankruptcy estate. O'Finan admitted on the record that he attended Trustee's inspection of Debtor's property at the

---

[2] Trustee filed a First Amended Complaint ("Amended Complaint") on August 19, 2024, to add a handful of new Defendants. (ECF No. 248).

4

direction of Shumate even though Higgins was the only party required to attend. (ECF No. 213 at 181); *see also* (Trustee's Ex. No. 8) (showing Shumate's former counsel on the phone with Shumate during Trustee's inspection). Further, O'Finan allegedly attempted to confine Trustee to a small area of the large commercial complex and later called law enforcement to escort Trustee during the remainder of Trustee's investigation. (ECF No. 66 at 6).

Ultimately, Trustee retrieved few records and was denied access to Debtor's computers and digitally stored data. (ECF No. 211 at 11). Although the information turned over included documents that Higgins claimed did not exist, Trustee testified that much of the information was insignificant or not relevant to Debtor's most recent operations. *Id.* at 12. Moreover, during the investigation Trustee observed what appeared to be at least two burn piles with remnants of paper in freshly disrupted soil, confirming some of the whistleblower's allegations about the destruction of Debtor's records. *Id.* at 13. Higgins later admitted that she instructed employees to burn large piles of Debtor's records even though the records were property of the estate upon the filing of Debtor's petition. (ECF No. 106 at 146). Higgins testified that she routinely destroyed documents if they were duplicates or stored electronically. (ECF No. 49 at 75). The Court, however, did not find her explanation credible and expressed doubt as to whether such a practice is an accepted form of managing company records. (ECF No. 106 at 146).

### III. Trustee's First Motion for Sanctions and Subsequent Court Orders

On April 29, 2024, Trustee moved for sanctions on an expedited basis, arguing O'Finan and Shumate's actions constituted contempt of Court. (ECF No. 66). On May 3, 2024, the Court held a hearing on a Motion for Permanent Injunction and Trustee's Motion for sanctions. (ECF No. 106). The Court compelled Shumate and other Defendants to testify about their conduct and determined on the record that Shumate aided in impeding Trustee's efforts to collect Debtor's

5

books and records. *Id.* at 143. Further, the Court found that "at a minimum, Mr. Pollard and/or Mr. Shumate were complicit in the burning of [Debtor's] documents." *Id.* at 146. The Court reminded the parties that "there is an absolute duty to cooperate with the Trustee." *Id.* at 144. Because the parties in this case failed to do so, the Court issued an Order Requiring Production of Business Records that instructed Shumate to produce all documents of Debtor, provide access to digitally stored accounting information, and give Trustee access to Debtor's computers. (ECF No. 81).

After entry of the Court's Order Requiring Production of Business Records, Trustee returned to Debtor's Corpus Christi location on May 7, 2024, for a second inspection which yielded substantial information about Debtor's pre-petition operations. (ECF No. 211 at 15). Additionally, Trustee gained access to Debtor's computers and digitally stored data.[3]

On May 15, 2024, the Court entered an Interim Order Granting Sanctions ("Interim Sanctions Order") in response to Shumate's testimony that revealed CESGH's operation of a wireline business in Midland allegedly under Debtor's name. (ECF No. 113). The Court granted non-monetary sanctions, requiring Shumate to: (1) grant full access to all of Debtor's facilities, (2) turnover checks and money orders, and (3) comply with Court's order requiring production of business records. (ECF No. 113 at 3). The Court, however, reserved making a determination on monetary sanctions and instructed Trustee to provide evidence on how to quantify such relief. (ECF No. 106 at 148). Thereafter, on June 4, 2024, the Court granted the parties' Agreed Order on Preliminary Injunction which largely reiterated the Court's previous orders. (ECF No. 148).

---

[3] Trustee later filed a Supplement to the Motion for Sanctions on May 15, 2024, describing the results of Trustee's second inspection and adding O'Finan to the list of potentially sanctionable parties in the supplement. (ECF No. 112). O'Finan no longer represents Shumate but is still attorney of record in this case for other entity Defendants. (ECF No. 144).

### IV. Trustee's Amended Motion for Sanctions

Pursuant to the Court's Interim Sanctions Order, Trustee's Counsel observed CESGH's operations at the Midland facility on June 21, 2024. (ECF No. 211 at 19). Notably, Trustee's inspection was met with cooperation by all parties. On July 29, 2024, Trustee sent a demand to Shumate, requesting Trustee be added as the signatory on all bank accounts for all wireline operations as specified in the Interim Sanctions Order. (ECF 225 at 15). Shumate refused to comply with Trustee's demand. *Id.* at 2.

On July 30, 2024, the Court continued the hearing on Trustee's Motion for Sanctions. (ECF No. 213). Trustee's counsel explained that Trustee "only brought sanctions for things [he] knew" at the time the original motion was filed. *Id.* at 8. As a result of information learned during Trustee's second Debtor's property and operations in Midland, Trustee asserted other violations of the Court's orders occurred. *Id.* Shumate argued, *inter alia*, that Trustee failed to specify which Court orders Shumate violated. *Id.* at 14. Because Shumate lacked notice of the new allegations and additional non-monetary sanctions sought by Trustee, the Court directed Trustee to amend the Motion for Sanctions. *Id.* at 25.

Consequently, Trustee filed an Amended Motion for Sanctions on August 8, 2024, adding a request for sanctions for violations of the automatic stay. (ECF No. 211). The Amended Motion focuses primarily on Shumate's conduct, alleging Shumate directed the actions of the other Defendants. (ECF No. 211). Five days later, Shumate filed his Response to Trustee's Amended Motion, claiming he complied with the Court's orders and that a portion of Trustee's request for sanctions is premature because it relates to the underlying causes of action in the adversary proceeding. (ECF No. 225). Specifically, Shumate argued the automatic stay is not a controlling

7

order for purposes of this Motion because Trustee included a caused of action for violations of the automatic stay in Trustee's First Amended Complaint.

Thereafter, Trustee filed a Corrected Reply to Shumate's Response on August 14, 2024. (ECF No. 231). Trustee reiterated the facts in Trustee's Amended Motion for Sanctions and claimed that the automatic stay is a Court order upon which the Court may award sanctions through this Motion. *Id.* at 5. Trustee further pointed to sections of the Interim Sanctions Order, alleging that Shumate remains in violation of the Court's protective orders. *Id.* at 6.

### V. The Final Sanctions Hearing

The Court held the final sanctions hearing on September 17, 2024. (ECF No. 257). Israel Rodriguez, Carrie Butler, and Pollard testified at the hearing.[4] Most of the testimony revolved around CESGH's operation of a wireline business in Midland and the way Higgins maintained financial records for Shumate and his entities. Notably, Pollard testified about a contract for the sale of Debtor's land which listed a closing date of June 10, 2024—at date after the entry of the Court's TRO and Preliminary Injunction. (ECF No. 283 at 39–40). Pollard admitted that neither Pollard nor any other Defendant requested permission from the Trustee to sell Debtor's property. *Id.* at 40. Nevertheless, Pollard explained the contract fell through and Debtor's property was never converted. *Id.* Despite this, Trustee claims Shumate directed Pollard to sign the contract in violation of the Court's TRO and Preliminary Injunction. (ECF No. 211 at 21). At the end of the hearing, the Court took the matter under advisement.

---

[4] Pollard previously declined to testify, invoking his Fifth Amendment right because he is under indictment for Tax Fraud in an unrelated case.

### VI. The Parties' Arguments

Trustee argues monetary sanctions are necessary to compensate Trustee for the additional work Trustee performed to gather Debtor's documents because of Shumate's obstruction. (ECF No. 211). Trustee also argues monetary sanctions are appropriate to punish Shumate for allegedly violating the automatic stay by operating a post-petition wireline business with Debtor's assets and clientele, selling property of the estate, and using estate funds for personal use. *Id.* at 21.

Further, Trustee seeks non-monetary sanctions, claiming Shumate failed to fully comply with the Court's Interim Sanctions Order. As such, Trustee requests the Court order Shumate to turnover checks, money orders, or cash received in the name of Debtor or "by the Cinch Wireline Business" and name Trustee as signatory for all withdrawals from "any Cinch Wireline Business bank account." (ECF No. 211 at 21).

Shumate contends additional sanctions are unnecessary because the Court's Interim Sanctions Order was sufficient because he has fully complied with the Court's previous orders. (ECF No. 225 at 6). Shumate also claims Trustee is using the Amended Motions for Sanctions as a vehicle to litigate the underlying merits of Trustee's complaint in this adversary. *Id.* at 8. According to Shumate, "Trustee should not be entitled to the relief requested until the Court can conduct a final trial on the merits." *Id.*

### ANALYSIS

Bankruptcy courts possess authority to "police conduct" of those who appear before them. ***Pequeno v. Schmidt***, 307 B.R. 568, 580 (S.D. Tex. 2004). This authority is derived from a variety of sources including: "sanctions provisions . . . available in the Code, by referral to the United States Attorney's Office for investigation and/or prosecution under 18 U.S.C. §§ 151–57, by

9

refusal to grant a discharge, or by general sanction provisions." *Id.* Pertinent here is the Court's power to sanction under 11 U.S.C. § 105.

Section 105[5] grants bankruptcy courts the authority to take any action "necessary or appropriate to enforce or implement court orders," including the ability to grant remedies through civil contempt and monetary sanctions. 11 U.S.C. § 105; *see also* **Rodriguez v. Smith (In re Rodriguez)**, 652 B.R. 750, 759 (Bankr. S.D. Tex. 2023) (recognizing a bankruptcy court's inherent authority to sanction). As such, bankruptcy courts have discretion to award civil remedies for violations of court orders and the Bankruptcy Code. **In re Rodriguez**, 652 B.R. at 759; *see also* **In re U.S. Bureau of Prisons**, 918 F.3d 431, 438 (5th Cir. 2019) (applying an abuse of discretion standard of review).

The Fifth Circuit, however, has advised that a court must exercise its power to sanction with "great restraint and caution." **Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.**, 86 F.3d 464, 467 (5th Cir. 1996). "Such powers may be exercised only if essential to preserve the authority of the court and the sanction chosen must employ 'the least possible power adequate to the end proposed.'" *Id.* (quoting **Anderson v. Dunn**, 19 U.S. 204, 231 (1821)); *see also* **In re Network Cancer Care, L.P.**, No. 02-39409, 2004 Bankr. LEXIS 2559, at *27–28 (Bankr. N.D. Tex. Sep. 17, 2004) ("Because of the potency of inherent powers and the limited control of their exercise, however, they must be used with great restraint and caution.").

### I.    Determining Whether to Award Sanctions

A party seeking sanctions in a civil contempt proceeding must establish by clear and convincing evidence that (1) a court order was in effect, (2) the order required or prohibited certain conduct by the contemnor, and (3) the contemnor failed to comply with the court's order. **Lyn-Lea**

---

[5] All statutory citations and references are to Title 11 of the United States Code unless otherwise noted.

10

*Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 291 (5th Cir. 2002). In this case, the Court is "attentive to the distinction between contempt of court, for which remedial sanctions . . . may be appropriate, and the existence of any estate causes of action which may arise from [Shumate's] conduct in the Case, for which money damages may be appropriate." *In re Network Cancer Care, L.P.*, 2004 Bankr. LEXIS 2559, at *28. "There is no question that the same conduct may give rise to both an order adjudging a party in contempt and a claim for damages." *Id.*; *see also* *Gates v. RAC Acceptance Tex., LLC (In re Gates)*, 621 B.R. 129, 140 (Bankr. W.D. Tex. 2020) (denying contempt sanctions because the court awarded damages for a violation of the automatic stay based on the same conduct).

Considering its obligations, the Court turns to the orders and conduct at issue here. The relevant orders include the TRO, the Order Requiring Production of Business Records, the Preliminary Injunction, and the Interim Sanctions Order. (ECF Nos. 11, 81, 96, & 113). These orders required Shumate to turnover property of Debtor and to cooperate with Trustee's investigation of Debtor's pre-petition business. From the filing of Debtor's petition, Shumate lied to the Court. Shumate claimed that he was unaware of the Court's TRO, but evidence shows that Shumate directed O'Finan to block, or at least, substantially limit Trustee's first inspection of Debtor's Corpus Christi property. (Trustee's Ex. No. 8). The Court also held Shumate's testimony was not "credible or believable regarding his reasons and basis for interference with the production of" Debtor's business records. (ECF No. 113 at 2). Additionally, Shumate's role in the attempted sale of the Corpus Christi property violates the Court's Preliminary Injunction which prohibits the liquidation of the property of the estate. (ECF No. 96 at 5). Thus, Trustee proved by clear and convincing evidence that Shumate's conduct is in violation of several court orders, rendering

11

Shumate in contempt of Court.[6]

Trustee also requests the Court find Shumate's conduct violated the automatic stay as a basis for awarding sanctions. (ECF No. 211). Shumate counters that a sanctions request for an alleged violation of the automatic stay would be premature at this stage. (ECF No. 225 at 8). The Court agrees with Shumate. While the Trustee is correct that the automatic stay is considered an order of the Court,[7] a violation of the automatic stay forms part of Trustee's claim for relief in the Amended Complaint. (ECF No. 248 at 68–72). At the time of this Order, the response deadline for a handful of parties has not expired and the parties have not reached the discovery phase of litigation. Determining whether sanctions are appropriate for violations of the automatic stay is an issue best determined at a different point in this case as part of Trustee's First Amended Complaint. *See* ***In re Network Cancer Care, L.P.***, 2004 Bankr. LEXIS 2559, at *28 (differentiating between a motion for sanctions unrelated to a cause of action and sanctions as relief under a cause of action). As such, the Court declines to determine sanctions based on Shumate's conduct prior to the entry of the Court's TRO and other protective orders.

Accordingly, the Court finds civil sanctions are appropriate only for Shumate's participation in the obstruction of Trustee's inspection of Debtor's Corpus Christi property and the attempted sale of Debtor's property in violation of the Court's protective orders.

## II.  Determining the Kind of Sanctions to Award

The Court now turns to the type and valuation of sanctions to award, being mindful of the Fifth Circuit's mandate to exercise judicial restraint. ***Nat. Gas Pipeline Co. of Am.***, 86 F.3d at 467.

---

[6] Trustee's Amended Motion for Sanctions did not name O'Finan, and Trustee intimated on the record that he is seeking sanctions against Shumate alone. (ECF No. 283 at 146). As such, the Court analyzes only Shumate's conduct to determine sanctions.

[7] "The automatic stay is a self-executing injunction and constitutes a court order for contempt purposes." ***West v. Peterson (In re Noram Res., Inc.)***, Nos. 08-38222, 11-03598, 2015 WL 5965654, at *13 (Bankr. S.D. Tex. 2015) (determining whether sanctions are appropriate at the motion for summary judgment stage where violation of the automatic stay formed the basis for relief in the underlying complaint).

Trustee requested both non-monetary and monetary sanctions. The Court will consider these requests in turn.

    a. *Non-monetary Sanctions*

For non-monetary sanctions, Trustee requests the Court order Shumate to comply with the Court's Interim Sanctions Order. (ECF No. 211 at 21). Trustee claims Shumate has failed to (1) name Trustee as the only signatory for all withdrawals from any Cinch Wireline Business Bank account and (2) turnover cash or checks received by Debtor or the Cinch Wireline Business. (ECF No. 113 at 4).

Section VI of the Court's Interim Sanctions Order states Shumate must "allow the replacement of Plaintiff upon Plaintiff's request, as the only authorized signatory for all withdrawals from any Cinch Wireline Business bank account." (ECF No. 113 at 4). Pointing to this provision, Trustee suggests he is entitled to be signatory for the bank accounts of Debtor, CES, and CESGH based on the premise that CESGH is allegedly operating Debtor's business in violation of the automatic stay. Shumate counters that neither the Court's TRO nor Interim Sanctions Order prohibit Shumate from operating a wireline business under a separate entity. (ECF No. 225 at 8).

The Court finds that Trustee's interpretation of the Court's Interim Sanctions Order is too broad and suggests all entities and property owned by Shumate are part of the bankruptcy estate. Permitting Trustee's request to control any wireline business bank account would require the Court to make a finding about the validity and extent of property belonging to the bankruptcy estate. Such a finding relates to several of Trustee's claims in the underlying complaint. At this stage of the litigation, it would be premature for the Court to make any finding that Shumate, through CES or CESGH, stole property of Debtor to operate a wireline business post-petition. This issue must

13

be established by Trustee during trial. Accordingly, the Court interprets its order narrowly to encompass only Debtor's bank accounts.

Notwithstanding the Court's narrow interpretation of Section VI, Shumate argues that he cannot comply with the Interim Sanctions Order because he is not the Debtor and any request about Debtor's bank accounts should be directed at Debtor's counsel. (ECF No. 225 at 7). Shumate misconstrues the impact of his signature. When Shumate signed Debtor's amended schedules, Shumate listed himself as the president of Debtor. (Case No. 23-51742 ECF No. 81 at 5). Shumate's designation on the amended schedules portrays to the Court that he has the authority to act on behalf of Debtor and access to information of Debtor, including Debtor's bank accounts. The Court recognizes that Debtor is represented by independent counsel, but that does not absolve Shumate of his duty as one of Debtor's representatives to make information and property of Debtor available to Trustee. Accordingly, the Court orders that Shumate ensure Trustee is replaced as signatory on all of Debtor's bank accounts within 14 days of the entry of this order. To guarantee Trustee is named as signatory, the Court also directs this order at Debtor's counsel.

Trustee further alleges Shumate failed to turnover cash and money orders as required by Section VII of the Court's Interim Sanctions Order. (ECF No. 211 at 21). Section VII requires Shumate to turnover "any money orders or cash received in the name of the Debtor or received by the Cinch Wireline Business." (ECF No. 113 at 4). The Court also interprets this provision narrowly to encompass only the property of Debtor, not CES or CESGH. At this time in the litigation, Trustee is not entitled to monies earned by CES or CESGH through CESGH's operation of a wireline business because Trustee must prove such property is property of the estate. As such, to the extent Shumate possesses any money orders or cash received in the name of Debtor, the Court directs Shumate to turnover the property to Trustee within 14 days of the entry of this order.

Therefore, the Court grants Trustee's request for non-monetary sanctions and instructs Shumate to (1) turnover any money orders or cash of Debtor and (2) directs both Shumate and Debtor to name Trustee as signatory on all of Debtor's bank accounts. Shumate's continued failure to comply with Sections VI and VII of the Interim Sanctions Order will result in the Court issuing a bench warrant for Shumate's confinement or a fine of $1,000 per day.[8]

    b. *Monetary Sanctions*

In addition to non-monetary sanctions, Trustee requests the Court award monetary sanctions and damages as compensation for the delay Trustee experienced in collecting property of Debtor because of Shumate's interference with Trustee's investigation. Unlike non-monetary sanctions, the Court has not awarded monetary sanctions to date.

The Fifth Circuit has identified four factors the Court must address when awarding monetary sanctions—(1) the conduct being punished or deterred by the sanction; (2) the costs or expenses caused by Defendants' conduct; (3) the reasonableness of the costs or expenses; and (4) that the sanction is the least severe option to achieve the purpose for which the sanction is imposed. **Topalian v. Ehrman**, 3 F.3d 931, 937 (5th Cir. 1993). Because the Court addressed the first factor above and found Shumate's conduct sanctionable, the Court will address the remaining factors below.

Under the second factor, the party seeking sanctions must demonstrate a connection between the value of the monetary sanctions requested and the contemnor's sanctionable conduct.

---

[8] The Fifth Circuit has held that per diem fines are a "close analogy" to the Court's power to issue coercive civil contempt sanctions and do not violate due process, especially where the fined party is afforded a hearing. **Alberti v. Klevenhagen**, 46 F.3d 1347, 1360 (5th Cir. 1995). In this case, "the fines imposed by the court are to be assessed for each day the court order is violated." ***Id.*** Based on the repeated and continued violations of the Court's protective orders and the hearing afforded to Shumate, the Court finds a coercive per diem fine of $1,000 is reasonable under the circumstances. *See* **De La Fuente v. Wells Fargo Bank, N.A. (In re De La Fuente)**, 430 B.R. 764, 791–93 (Bankr. S.D. Tex. 2010) (assessing a daily coercive fine of $1,261.28 for the defendant's continued violations of the court's order).

15

*Id.* As such, the Court must examine Shumate's conduct in comparison to the sanctions sought. ***In re TAGT, L.P.***, 393 B.R. 143, 154 (Bankr. S.D. Tex. 2006). The civil sanctions awarded "must be calculated either to (1) coerce the contemnor into compliance with a court order or (2) compensate another party for the contemnor's violations." ***In re Highland Cap. Mgmt., L.P.***, 98 F.4th at 174.

At the May 3 hearing, the Court specifically requested Trustee provide the Court with a method to quantify monetary sanctions because Trustee did not list a definite amount in either the original or Amended Motion for Sanctions. (ECF No. 106 at 148). Trustee later submitted a large volume of evidence to show the harm experienced by Trustee, including Trustee's counsels' lodestars that indicated attorney's fees totaling over $260,000. (Trustee's Ex. No. 1). Trustee also claimed damages in excess of eight million dollars for Shumate's violations of the automatic stay. (Trustee's Ex. No. 2).

A fee-shifting sanction, like the one sought here, is compensatory when the Court shifts the attorney's fees incurred "because of the misconduct at issue." ***In re Highland Cap. Mgmt., L.P.***, 98 F.4th at 175; *see also* ***In re TAGT, L.P.***, 393 B.R. at 154 ("Frequently the amount of sanctions is determined by examining opposing counsel's attorney's fees."). If the party seeking sanctions would have incurred expenses absent the contemnor's contumacious conduct, there is no harm and the court "lacks a basis for shifting the expense." ***In re Highland Cap. Mgmt., L.P.***, 98 F.4th at 175. Shumate argues Trustee incurred no fees or expenses because Trustee employed counsel on a contingency basis. (ECF No. 225 at 9). As a result, Shumate contends Trustee has suffered no harm and is not entitled to compensatory monetary sanctions. *Id.* The Court disagrees with Shumate. If a contemnor can evade sanctions because the party seeking to enforce a court order is employed on a contingency basis rather than an hourly rate, a contemnor could frustrate the purpose of § 105 which is to "prevent an abuse of process." 11 U.S.C. § 105(a).

16

Other Texas courts have reached the same result under similar rules. For example, in ***Mercury Luggage Manufacturing Co. v. Domain Portrait., LLC*** the District Court for the Northern District Court of Texas found sanctions appropriate on a motion to compel where the moving party's counsel was employed under a contingency fee arrangement. ***Mercury Luggage Mfg. Co. v. Domain Prot., LLC***, No. 3:19-cv-1939, 2022 WL 254351, at *13 (N.D. Tex. 2022). The court there determined the moving party's attorney's fees were, in essence, a measure of the damage caused by the non-complying party's conduct. ***Id.*** As a result, the court awarded sanctions for the work the moving party conducted to compel discovery. ***Id.***

The Court applies the same logic, finding that Trustee's contingency fee arrangement does not preclude the Court from fashioning a sanctions award to compensate Trustee for additional work Trustee had to perform as a result of Shumate's failure to cooperate. Accordingly, the Court views Trustee's counsel's lodestars as evidence of the damage incurred by Trustee.

Shumate alternatively argues that a large majority of the fees and damages claimed by Trustee are unrelated to violations of the TRO or other Court orders and should be denied. (ECF No. 225 at 9). To support his position, Shumate submitted exhibits that suggest roughly $22,000 of Trustee's fees are connected to Trustee seeking enforcement of the Court's orders. (Defendant's Ex. Nos. 2 & 3). The Court agrees with Shumate.

Trustee employed two attorneys, Shelby Jordan ("Jordan") and Butch Boyd ("Boyd") who both submitted a Proffer of Testimony that included a lodestar of the time spent working on this case. (Trustee's Ex. Nos. 1 & 2). Both lodestars include entries for work performed in connection with Debtor's underlying bankruptcy petition and the initial filing of this adversary proceeding. Such entries have nothing to do with the events that precipitated a need for sanctions and involve work Trustee was required to perform regardless of Shumate's actions. As such, the Court only

considers the lodestar entries and events that are directly relate to this Motion and Shumate's sanctionable conduct. Jordan and Boyd's relevant entries reflect a value of $10,547.50 and $11,580.00, respectively. (Trustee's Ex. Nos. 1 & 2). For both lodestars, the Court did not consider block-billed[9] entries where it was not clear to the Court the amount of time Trustee's counsel spent on activities related to enforcing the Court's orders.[10] Therefore, the Court finds Trustee experienced a total harm valued at $22,127.50.

Trustee also claimed damages at the final sanctions hearing. (ECF No. 283 at 152–64). These damages include events that occurred prior to the entry of the Court's TRO and relate to matters that form a bases for Trustee's complaint. As such, the Court declines to award additional sanctions based on Trustee's additional evidence of damage. Trustee may seek to recover the entire amount requested at a later stage in this litigation, but only a portion is compensable under Trustee's motion here.

Turning to the third factor, the Fifth Circuit requires the Court consider the "reasonableness of the nonviolating party's actions in connection with the sanctionable conduct." *Topalian*, 3 F.3d at 937. A party seeking sanctions for wrongful conduct of an opposing party "has a duty to mitigate those expenses." *Id.* The costs or expenses requested from the Court cannot be "self-imposed, mitigatable, or the result of delay in seeking court intervention." *Id.*

Trustee acted reasonably under the circumstances here to enforce the Court's orders and request sanctions. Trustee inspected Debtor's Corpus Christi location on April 26, 2024, and

---

[9] Block billing is a "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks. Block billing is disfavored because it prevents the court from accurately determining the time spent on any particular task." *Brian Whiteside & Autoficio, LLC v. Cimble Corp.*, No. 4:17-cv-404, 2024 WL 3825237, at *24 (E.D. Tex. Aug. 14, 2024).

[10] Neither Jordan nor Boyd amended their proffers to include updated lodestars. The Court recognizes Trustee may have experienced additional harm after the date of the last entry in both lodestars; however, the Court cannot quantify such damage without evidence. Accordingly, the Court only awards monetary sanctions based on evidence presented to the Court.

sought sanctions on April 29, 2024, in response to Shumate's obstruction of Trustee's inspection. Trustee did not delay seeking sanctions and has been diligent in prosecuting this Motion. None of the harm experienced by Trustee is self-imposed. Accordingly, the Court finds Trustee acted reasonably.

Finally, under the fourth factor, the Fifth Circuit mandates the Court impose "the least severe sanction to achieve the purpose of the rule under which it [is] imposed." *Id.* at 937. Unlike district courts, bankruptcy courts lack criminal authority. *In re Highland Cap. Mgmt., L.P.*, 98 F.4th at 174 (explaining Congress did not grant criminal sanction authority to bankruptcy courts). As a result, a bankruptcy court may not award sanctions for the "primary purpose of punish[ing] the contemnor or vindicating the authority of the court." *Id.* (internal quotations omitted); *Topalian*, 3 F.3d at 937 (explaining courts must "demonstrate that sanctions are not vindictive or overly harsh reactions to objectionable conduct"). Thus, a lack of relationship between the sanctions awarded and the injured party's loss evidences a punitive rather than remedial intent. *Yaquinto v. Greer*, 81 B.R. 870, 880 (N.D. Tx. 1988).

Here, only a portion of the evidence submitted to the Court quantifies harm directly linked to Shumate's conduct that violated the Court's protective orders. While the Court may be tempted to impose substantial monetary sanctions considering the allegedly egregious conduct of Shumate, the Court is mindful of its authority to impose only remedial or coercive sanctions. Thus, $22,127.50 is the least severe sanction to compensate Trustee for the additional work Trustee had to perform to complete his investigation and enforce the Court's protective orders.

Accordingly, the Court orders Shumate pay $22,127.50 in monetary sanctions to Trustee within 14 days of the entry of this order. The remaining amounts requested by Trustee are denied without prejudice.

## CONCLUSION

Trustee has carried his burden in proving by clear and convincing evidence that Shumate obstructed Trustee's investigation in violation of the Court's orders. Trustee further demonstrated that Shumate failed to fully comply with the Court's Interim Sanctions Order. Finally, Trustee established a monetary amount of damage valued at $22,127.50 that is directly connected to Shumate's sanctionable conduct. For the foregoing reasons, Trustee's Amended Motion for Sanctions (ECF No. 211) is GRANTED in part and DENIED in part.

Accordingly, IT IS ORDERED that Shumate to turnover any money orders or cash of Debtor.

IT IS FURTHER ORDERED that both Shumate and Debtor name Trustee as signatory on all Debtor's bank accounts.

IT IS FURTHER ORDERED that Shumate pay monetary sanctions of $22,127.50 to Trustee.

Shumate has 14 days from the entry of this Order to comply. Shumate's failure to abide by the Court's Order will result in the Court issuing a bench warrant for Shumate's confinement or a fine of $1,000 per day.

# # #